SALVADOR "VISCO" SALCIDO V. STATE.

No. 29,900 January 7, 1959.

*Pearson and Merkin,* by *William L. Merkin,* El Paso, for appellant.

*William E. Clayton,* District Attorney, *Edwin F. Berliner,* First Assistant District Attorney, El Paso, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is statutory rape; the punishment, thirty years.

The evidence of the state shows that the prosecutrix, age fifteen, while walking home from work alone at night in the city of El Paso, was forced into an automobile occupied by the appellant and two other persons, who then drove to the sand hills outside the city where the appellant had carnal intercourse with the prosecutrix by force and without her consent.

Appellant, testifying in his own behalf, admitted that he had carnal intercourse with the prosecutrix, but stated that it was with her consent. He also offered testimony of voluntary previous acts of carnal intercourse by the prosecutrix with another person.

The jury chose to accept the prosecutrix' version of the transaction, and we find the evidence sufficient to support its verdict.

Appellant contends that the trial judge erred in refusing to grant his second amended motion for a new trial because the jury received new evidence while they were deliberating which was prejudicial to him.

The motion and affidavits in support thereof allege that during its deliberations it received new evidence in the form of statements of members of the panel to the effect that an accused "would be subject to pardon, parole, and time off for good behavior" and "would serve approximately one-third of the time to which he was sentenced by the jury's verdict"; that the California Prison System was discussed and the fact that prisoners in that state "behaved themselves in prison" got two-thirds of their time off; and that following this some of the jurors raised their votes to thirty years because they figured such a term could be served in ten years.

The holdings of this court in Harvey v. State, 150 Texas Cr. Rep. 332, 201 S.W. 2d 42, and Slaughter v. State, 154 Texas Cr. Rep. 460, 231 S.W. 2d 657, would indicate that proof at the hearing on motion for new trial should be limited to those matters set out in the pleadings. Be this as it may, we have carefully examined the statement of facts on motion for new trial and find that the appellant was able to establish that which was alleged in the motion and affidavits, and nothing more. Such statement of facts consumes 39 pages, and we do find certain isolated questions and answers which would, taken alone, seem to indicate that the jurors thought that all inmates were able to serve any particular sentence in one-third of the total number of years assessed; but an examination of the entire testimony leaves us convinced that these discussions were predicated upon the contingency that the inmate would secure time off for good behavior. This being so, we return to the allegations in the motion to determine if reversible error is reflected thereby.

In Roberson v. State, 160 Texas Cr. Rep. 381, 271 S.W. 2d 663, the showing was made that during its deliberations the jury discussed the fact that a convict would be eligible for parole after having served one-third of his term. In that case, we gave application of Article 775a, V.A.C.C.P., to the term of years actually assessed and said, "Our primary concern is to determine

whether or not the information which was received by the jury was untrue or was harmful to appellant."

In the later case of Napier v. State, 166 Texas Cr. Rep. 361, 314 S.W. 2d 102, in which we found practically the same type of discussion as in Roberson, we called attention to the adoption of Section 15 of Article 781d, V.A.C.C.P., which authorizes the release on parole of one "who has served one third (1/3) of the minimum sentence imposed." There we said, "It will be seen from the above that the information which the foreman gave his fellow jurors was not 'untrue' and therefore was not hurtful to the appellant." See also Johnson v. State, 166 Texas Cr. Rep. 237, 305 S.W. 2d 606. In fact, Judge Hawkins, speaking for this court in Walker v. State, 150 Texas Cr. Rep. 421, 201 S.W. 2d 823, said that it is a matter of common knowledge that prisoners are credited with extra time for good behavior; and in Plasentilla v. State, 152 Texas Cr. Rep. 618, 216 S.W. 2d 187, speaking through Judge Davidson, it was held that a reversal was not called for where one juror told his fellows "that if the defendant got 25 years he would serve only 4 or 5 years before being pardoned and if he got 50 years he would probably serve 15 or 20 years before being pardoned."

In view of the above, we have concluded that jury misconduct has not been shown in the case at bar.

By formal bill of exception, appellant complains of the court's refusal to give his special requested charge submitting his defense that the prosecutrix consented to the act and was of previous unchaste character. He further asserts in the bill that the trial judge erred in failing to respond to his exception that the charge did not affirmatively present his defense but presented it in a negative manner, and he also insists that the defensive charge as given should have been separately submitted to the jury.

There appears no substantial difference between the special requested charge and the court's charge submitting the only defense urged by the appellant. Each sufficiently and affirmatively presents the defense authorized by Article 1183, V.A.P.C.

The refusal of the requested charge was not error because it was in substance included in the court's main charge. 24-A, Texas. Juris., sec. 45, p. 600; Mata v. State, 163 Texas Crim. Rep. 584, 294 S.W. 2d 820.

Appellant's defense was submitted in the same paragraph in the main charge following the state's application of the law to the facts. In submitting his defense, the jury was instructed to acquit the appellant, even though they found beyond a reasonable doubt that he had carnal intercourse with the prosecutrix, if they believed such carnal intercourse was with her consent, and further believed that prior to such time she had had carnal intercourse, or if they had a reasonable doubt thereof to acquit the appellant.

The court next charged on the burden of proof, the presumption of innocence, and the application of the law of reasonable doubt. The instructions submitting appellant's defense should have been separately submitted in the main charge. However, the court's charge, considered as a whole, shows that the appellant's defense was adequately presented to the jury, hence no reversible error is shown.

No reversible error appearing, the judgment of the trial court is affirmed.

DAVIDSON, Judge, (dissenting).

Sec. 7 of Art. 753, C.C.P.; says that a new trial in a felony case shall be granted "Where the jury, after having retired to deliberate upon a case, have received other testimony. * * *"

This court has repeatedly held that when that statute is shown to have been violated a reversal of the conviction is mandatory, as no speculation as to injury will be indulged. Attesting authorities will be found under Notes 142 and 143 of Vernon's C.C.P.

In addition to the mandate of Sec. 7, Sec. 8, of Art. 753, C.C.P., provides that a new trial in a felony case shall be granted "Where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial."

Under that statute the misconduct of the jury must be such as to prejudice the rights of the accused, thereby depriving him of a fair and impartial trial. The attesting authorities will be found under Notes 161 and 164, Vernon's C.C.P.

It is my opinion that this record reflects a violation of each

of the above statutory provisions and that a reversal of the conviction is called for, it being immaterial which violation is accepted as the basis therefor.

A reasonable and fair statement of the facts developed upon the hearing of the motion for new trial touching this question may be stated as follows:

At the outset of its deliberations the jury was of the unanimous opinion that the appellant was guilty of the offense charged.

Upon the question of the punishment to be assessed the jurors ranged from death or life imprisonment to ten years' confinement in the penitentiary, or a five-year suspended sentence.

While deliberating upon the punishment, a discussion arose among the jurors as to the time appellant would have credited upon his sentence under our good-conduct and parole laws.

Juror Harris, who originally favored a suspended sentence, gave in his testimony the most comprehensive account of the discussion by the members of the jury, and, inasmuch as his testimony stands undisputed in this record, such appears to be controlling. It was Harris' testimony that a member of the jury, who he thought was Juror Whipkey, "explained to all of us that a prisoner, when he got good conduct, got about one-third of the time that was given." In answer to the question. "Do you recall whether any method was used in determining how much of a man's sentence he would actually serve?," he said, "Yes, I think it was Mr. Whipkey took out a pencil and some paper and figured it out."

Juror Reynolds, who originally stood for a ten-year punishment, expressed a similar view as to the punishment after what the witness referred to as the figuring. According to the witness (Harris), Reynolds said "that for a man to serve ten years he would have to have about a 30-year sentence."

Such statement appears to have been predicated upon statements of Jurors Nelson, Whipkey, and Hill in the presence of all members of the jury, and was based upon "the system of how soon a man actually got out."

I quote from Harris' testimony, as follows:

["Q. Mr. Harris, when you voted on the final sentence in this matter how many years would the defendant serve in that sentence, based upon your discussions in that jury room?] A. Well, it was my understanding that he would serve a total of about ten years out of the thirty.

["Q. Mr. Harris, as a member of that jury do I understand then that you felt when you voted for 30 years that the man was going to serve 10 years?] A. Yeah. That was the way I felt about it.

["Q. Did you make your position clear as to what you understood and what you favored in the juryroom, sir?] A. Yes.

["Q. Did you make your position clear that you understood that you were voting for a 10-year sentence?] A. Yes."

Juror Harris further testified in that connection, upon redirect examination, as follows:

["Q. Mr. Harris, was it only after the discussions that you agreed to the 30-year sentence; that is, the discussions on this fact that *you* would serve only one-third of the time?] A. Yes, after the discussion. After they convinced me.

["Q. After they convinced you? Convinced you of what, sir?] A. That he would serve about ten years out of the thirty.

["Q. And that is the reason you voted for the 30-year sentence?] A. Yes, sir."

A reasonable and fair interpretation to be given to that testimony is that the thirty-year penalty in this case was assessed under the representation that appellant would have to serve only ten years of that time and, in fact, instead of assessing a punishment of thirty years in the penitentiary the jury intended to assess only ten years' confinement therein as punishment for the crime committed. In other words, because the jury wanted to be sure that the appellant actually would serve ten years in the penitentiary they fixed his punishment at thirty years, upon the theory and as a matter of law that only ten years' service would be required of him.

Such theory has no basis in fact, and there is no law which so says.

Under our system of jurisprudence it is the exclusive province of the jury in a felony case to fix the punishment within the limits authorized by law for the crime committed.

As to the question of punishment, an examination of our Penal Code reveals that Art. 1 thereof says that:

"The design of enacting this Code is to define in plain language every offense against the laws of this State, and to affix to each offense its proper punishment."

Art. 3 of our Penal Code says that:

"* * * no person ,shall be punished for any act or omission, unless the same is made a penal offense, and a penalty affixed thereto by the written law of this State."

Art. 1189, P.C., says that one guilty of rape—which was the offense here charged and of which this appellant was found guilty—"shall be punished by death or by confinement in the penitentiary for life, or any term of years not less than five."

In submitting this case to the jury, the trial court so instructed the jurors.

Art. 657, C.C.P., says that:

"The jury are the exclusive judges of the facts, but they are bound to receive the law from the court and be governed thereby."

Under the statutes mentioned and under the charge of the court, it was the province of the jury to fix appellant's punishment at confinement in the penitentiary for a term of thirty years, but the jury did not have the right to include within that punishment a punishment not authorized under the written law of this state. Nor did the jury have the right to consider how or under what conditions the appellant would serve the sentence imposed, as a basis for fixing the punishment to be assessed.

The punishment which the jury assessed against appellant was composed of two parts—the first being the assessment of a

term of ten years in the penitentiary for the crime committed and the second being the assessment of twenty years in the penitentiary because the legislature had enacted and thereby accorded to appellant the benefit of the communtation and good-behavior statutes of this state.

Thus it is demonstrated that twenty years' commitment to the penitentiary was a punishment not authorized to be inflicted for the crime committed.

Attention is next called to the fact that commutation and credit for time earned are neither definite nor fixed. Any assertion to the contrary and that commutation and time-earned credit, definite and fixed, are accorded to all prisoners either as a right or as law is entirely false.

The right of commutation and of good-behavior credit is accorded all prisoners by Arts. 6166v and 6184-1, Vernon's R.C.S., and is applied by prison authorities, who fix the rules and determine the character of conduct necessary to come within those statutes. At no time and under no condition is the prisoner given the right to demand that he receive commutation upon his sentence. Commutation and credit for good behavior are earned by the prisoner by his conduct, and these are never accorded as a matter of right. Ex parte Baird, 154 Texas Cr. Rep. 508, 228 S.W. 2d 511.

So then, the statement made to or any conclusion expressed by the jurors, here, that commutation or credit for good behavior was fixed and definite was simply not true. Any time given for commutation or earned by good conduct comes entirely as a result of the conduct of the prisoner, at the will and pleasure of the prison authorities because they are the sole judges of the prisoner's conduct.

The action of the jury, together with the method employed in arriving at the punishment in this case, is susceptible of but one construction, that being that such action was a revolt by the jury against the commutation and good-behavior laws of this state and a denial to this appellant of the rights given him by those laws.

The jury just simply did not want this appellant to receive the benefit of those laws, and took it upon themselves to fix a punishment that would prevent his receiving such benefit. Thus,

the very body that was called upon to enforce the law and to preserve the right of trial by jury openly circumvented and took it upon themselves to deprive this appellant of his rights under the law.

How or where the appellant was to serve the punishment inflicted in this case was neither the right nor the province of the jury to determine.

In usurping a power by taking upon themselves the abolishment of those laws, the jury were clearly guilty of misconduct which injured this appellant to the tune of twenty years' confinement in the penitentiary.

It is this feature of the instant case which distinguishes it from those cases where the matter of parole or commutation arose as a matter of reference or argument, with no definite time stated or fixed by the jury as was the case of Walker v. State, 150 Texas Cr. Rep. 421, 201 S.W. 2d 823.

I am committed to the legal proposition that no judge or jury or law-enforcing agency have the right, legally or morally, in the performance of their duties, to take it upon themselves to destroy, circumvent, or sidestep a law of this state because they do not believe it to be a good law or for that reason to take from or deny to any person the benefits accorded him by such law and as a revolt against that law.

The legislature wrote into the statute law of this state the parole, commutation, and good-behavior laws whereby one convicted of crime could, by his efforts, obedience, and behavior, earn credit upon his sentence.

It is the legislature, and the legislature, alone, that has the power to change or repeal those laws.

As long as such laws are on the statute books, they ought to be respected, applied, and enforced. Certainly, the right does not lay with the juries of this state to defeat or nullify those laws or to deny to one convicted of crime the benefits of such laws.

I dissent.