Benny SNEED, Appellant,

v.

The STATE of Texas, Appellee.

No. 008–82.

Court of Criminal Appeals of Texas, En Banc.

May 23, 1984.

---

John Mann, Amarillo, for appellant.

Bruce Roberson, County Atty., Perryton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON COURTS' OWN MOTION FOR REHEARING ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of murder and his punishment was assessed by the jury at ten (10) years' imprisonment.

On appeal the Amarillo Court of Appeals, 625 S.W.2d 761 (Tex.App. 7th Dist.1981), reversed the conviction on the basis of jury misconduct.[1] We granted the State's petition for discretionary review to determine the correctness of the holding of the Court of Appeals that the jury discussion of the parole law was so detrimental as to deprive him of a fair and impartial trial in violation of Article 40.03, § 8, V.A.C.C.P.

Appellant's ground of error was that the trial court erroneously overruled his amended motion for new trial, which was based in part on jury misconduct.

At the hearing on the amended motion for new trial three jurors testified as to the jury deliberations at the penalty stage of the trial[2] after the court had instructed the jury in its charge "... you will not consider the amount of time a defendant will have to serve under any sentence you may assess ...."

Juror Rosemary Rock testified that after the first vote, in which she voted for five years' imprisonment, someone "mentioned or asked if it was true that a prison year was only seven months." No one answered the question, and the word "parole" as such was never used. No one purported to know what the law really was. Rock related she had common knowledge that inmates are released on parole. While she testified the "discussion" after the first vote influenced her verdict, she later stated that it was her common knowledge that caused her to vote for seven years, then eight and in the fourth vote for ten years.

Juror Alvin O'Quin believed about five votes were taken. He first voted for five years' imprisonment, and after the first vote someone "brought it up" that the time probably would be cut in half. He confessed he could have raised the matter, but he didn't know the law, that none of the jurors knew, and no one pretended to know the law. O'Quin guessed it was common knowledge that inmates were released before the full time assessed, but no one knew the exact time. He related there was

---

1. The court also determined that the evidence was sufficient to sustain the murder conviction. It pretermitted a discussion of the other grounds of error.

2. All three jurors were called by the appellant. The State did not call the other jurors or attempt to controvert the testimony offered by appellant, which is all too typical of cases involving claimed jury misconduct.

no extensive discussion, "it was just mentioned."

When asked about if any possible action by the Board of Pardons and Paroles was discussed, O'Quin replied the jurors had been instructed not to mention that, and he hoped they had followed the instructions. He testified that the "discussion" was "probably" why he raised his vote to ten years.

Juror Denise Carroll recalled six or seven votes. She voted first for probation just to insure discussion on the issue which she knew would be unacceptable. She testified "a bunch of people" raised the parole question three or four times during deliberations though the word "parole" was not used. She stated the discussions consumed some 30 to 45 minutes. Someone stated "out of ten it would be four or five," that this was just speculation as no one professed to know the law, that the comment was not new to her as she knew inmates were released on parole. She stated, however, the comment caused her to change her mind.

Article 40.03, V.A.C.C.P. (Grounds for New Trial in Felony), provides in part:

"New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:

"(1) * * *

"(7) where the jury, after having retired to deliberate upon a case, has received other evidence; or ....

"(8) where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial...."

In *Heredia v. State*, 528 S.W.2d 847 (Tex. Cr.App.1975), the court reviewed many of the earlier cases which dealt with jury discussion of parole laws. The *Heredia* court found the earlier cases revealed an "inconsistency of standards." Id. at p. 852. As the court stated:

"Authority may be cited for a standard requiring a showing that (1) a misstatement of the law (2) asserted as a fact (3) which is relied upon by other jurors (5) who for that reason change their vote to a harsher punishment; before reversible error is shown; but likewise authority may be cited which would require only a showing that a statement on the parole law was made and it was either untrue or it was harmful. Much distance lied between these extremes."

*Heredia* made clear that cases involving jury discussion of parole laws may be analyzed as either the receipt of other evidence, prohibited by Article 43.03, § 7, V.A. C.C.P., or as jury misconduct, prohibited by Article 40.03, § 8, V.A.C.C.P.

In affirming the conviction, the *Heredia* court in effect rejected the above stated five-prong test derived from the earlier cases, and found no violations of either §§ 7 or 8 of said Article 43.03.[3] It may have been the intention of *Heredia* to eliminate the inconsistency of standards, but it did not succeed. See *Sanders v. State*, 580 S.W.2d 349, 357 (Tex.Cr.App.1979) (dissenting opinion), and cases there cited; *Munroe v. State*, 637 S.W.2d 475 (Tex.Cr.App.1982). This may well be because, as Judge Roberts pointed out in his plurality opinion in *Munroe*, the *Heredia* "court did not affirmatively set out the proper standards to be used."

In discussing the analysis of jury discussion of parole law under §§ 7 and 8 of Article 40.03, *Heredia* adhered to prior decisions that it is common knowledge that from time to time inmates of the Texas Department of Corrections are released on parole, see *Taylor v. State*, 420 S.W.2d 601 (Tex.Cr.App.1967), and cases there cited; *Austin v. State*, 531 S.W.2d 615, 618 (Tex. Cr.App.1975), and added "Consequently,

---

**3.** In *Heredia* one of the jurors stated a life sentence meant only 17 years. The jury foreman admonished the jurors they were not to consider *extraneous* information communicated to them. The matter was not thereafter discussed. The court had properly charged the jury not to consider in deliberations on punishment how long he would be required to serve in order to satisfy the penalty assessed. One may well wonder why *Heredia*, in view of the facts, was chosen as a vehicle to change the case law as to jury discussion of parole laws.

the mere mention of this common knowledge would not constitute the receipt of other evidence, *nor would a further discussion of it constitute receiving new evidence any more than discussion of any other matter of common knowledge by the jury.*" (Emphasis supplied.)

*Heredia* also held, however, that discussion of the parole law, although common knowledge, would in *every* case constitute jury misconduct since the parole law is not for the jury's consideration,[4] but observed that not all such misconduct denies a fair and impartial trial.

Thus a mention or discussion of the common knowledge that inmates of the penitentiary are released on parole would not be the receipt of other evidence under said § 7, but would always be jury misconduct under said § 8. Whether the misconduct constitutes reversible error would depend upon the facts of each case.

In view of this seemingly incongruous situation, it is not surprising that most of the cases since *Heredia* have been decided under § 8 of Article 43.03.

Judge Roberts in *Munroe* reviewed some of these cases[5] and concluded the test developed by these cases is now "... the defendant must show (1) that *any* discussion of the parole laws took place during the jury's deliberations (thereby showing jury misconduct), and (2) that the discussion denied him a fair and impartial trial. The latter requirement can be met by showing that even a single juror voted for an increased punishment because of the discussion of the parole laws." (Emphasis in the original.)

Judge Roberts in his plurality opinion also reviewed post-*Heredia* cases involving § 7 of Article 40.03 and concluded the case law did set forth a clear standard for review when the analysis is under said section. Judge Roberts concluded he would

hold in the future that cases dealing with the jury's discussion of the parole law would be analyzed only as jury misconduct under § 8 rather than under § 7 and over-rule all cases to the contrary.[6] In applying the test developed, *Munroe* was reversed.

In dissent Judge Dally stated:

"I cannot agree that a single juror's vote for an increased punishment following any discussion of the parole laws denies a defendant of a fair and impartial trial such as would require the granting of a new trial. This is the rule announced by the majority."

Judge Dally stated he would re-adopt the five-prong test discussed but rejected in *Heredia.*

Chief Justice Nye in a concurring opinion in *Collins v. State,* 647 S.W.2d 719 (Tex. App. 13 Dist.1982), stated:

"Since that decision [*Munroe*], this Court [Corpus Christi Court of Appeals] has seen with increasing frequency, cases alleging reversible error as the result of a jury's discussion of parole ....

"The rules in other jurisdictions noted above are consistent with the rule in Texas. Nonetheless, I have been unable to find a single jurisdiction which follows the Texas rule requiring the reversal of a conviction where discussions between jurors in the sanctity of the jury room cause even one juror to vote for an increased punishment.

\*    \*    \*    \*    \*    \*

"It is unrealistic that reversible error occurs only in Texas when this common knowledge manifests itself in an open expression or discussion of parole possibilities for the same harm befalls an accused when a juror votes for an increased punishment because he knows all about parole although parole has not

---

**4.** Since *Heredia* see *Jones v. State,* 596 S.W.2d 134, 137 (Tex.Cr.App.1980); *Sanders v. State,* 580 S.W.2d 349, 351 (Tex.Cr.App.1978); *Ashabranner v. State,* 557 S.W.2d 774, 777 (Tex.Cr. App.1977); *Moore v. State,* 535 S.W.2d 357, 358 (Tex.Cr.App.1976).

**5.** See *Sweed v. State,* 538 S.W.2d 119 (Tex.Cr. App.1976), and *Sanders v. State,* 580 S.W.2d 349, 353 (Tex.Cr.App.1978).

**6.** This plurality expression was overruled in *Diaz v. State,* 660 S.W.2d 93 (Tex.Cr.App.1983).

been discussed by other members of the jury."

It is undisputed that the "inconsistency of standards" have continued since *Heredia,* and it makes little sense to say that, without more, *any* mention or discussion by jurors of the parole laws is always jury misconduct, although common knowledge, and will result in reversal if only one juror will later say he voted a harsher penalty at the penalty stage of the trial because of the mention or discussion of parole.

■ After further consideration, we re-adopt the five-prong test gleaned from pre-*Heredia* cases.

To show that a jury's discussion of the parole law constitutes reversible error, it must be shown that there was

"(1) a misstatement of the law

"(2) asserted as a fact

"(3) by one professing to know the law

"(4) which is relied upon by other jurors

"(5) who for that reason changed their vote to a harsher punishment."

Such test shall apply to cases under either §§ 7 or 8 of Article 43.03, supra. All cases to the contrary are now overruled.

Turning to the facts before us, we observe the juror Rock stated that after the first vote, there was an asked but unanswered question whether a prison year was only seven months. Juror O'Quin testified, after the first vote, someone said the time would probably be cut in half, but it was just mentioned. He did not recall any question or remarks about seven months equaling a prison year. Juror Carroll testified that someone said that "out of ten it would be four or five," that it was just speculation, that the subject was brought

up three or four times and the discussion lasted 30 or 40 minutes. All three agreed that no one knew or professed to know the law, or asserted any misstatement of law as a fact.

The three jurors could not agree as to what was said about parole. All three had different versions and there was a conflict as to how extensive the "discussion" was. Was there just an unanswered question, was the subject just mentioned or was there a 30 minute or so discussion? This, along with other facts earlier mentioned, was before the trial judge at the hearing on the motion for new trial before his ruling on the motion.

■ It is well established that issues of fact as to jury misconduct raised at a hearing on motion for new trial are for the determination of the trial judge, and where there is conflicting evidence there is no abuse of discretion where the motion for new trial is overruled. *McCartney v. State,* 542 S.W.2d 156, 162 (Tex.Cr.App. 1976), and cases there cited; *Beck v. State,* 573 S.W.2d 786, 791 (Tex.Cr.App.1978). See also *Appleman v. State,* 531 S.W.2d 806, 810 (Tex.Cr.App.1975).

■ Applying the five-prong test to the instant case, it is observed that while the unanswered question or statements made were not accurate, they were not misstatements of the law giving the impression the appellant would be eligible for parole or released earlier than the law permits. Article 42.12, § 15(a), V.A.C.C.P., provides, inter alia, an inmate of the Department of Corrections may be released on parole who has served one-third of the maximum sentence imposed.[7] Further, there was no as-

7. In *Cooper v. State,* 509 S.W.2d 565 (Tex.Cr. App.1974), the affidavit of Juror Stormer stated Juror Gooden related in the jury room that her nephews had been to the penitentiary and the law was a prisoner had to serve only seven months and a few days for each prison year. Juror Gooden testified she had no knowledge of the law and spoke only of her experience with her nephews. Stormer's affidavit also reflected the jurors discussed Cooper would serve "only a little over one-half of the time of any sentence

before he would be released ... providing good behavior...."

This court in *Cooper* said:

"When we consider jurors' testimony as well as the affidavit, together with the effect of Article 42.12, Sec. 15, V.A.C.C.P. (Adult Probation and Parole Law), we conclude that the jury's discussion was not a misstatement of the law. In *Roberson v. State,* 160 Tex. Cr.R. 381, 271 S.W.2d 663, we noted that where the law provided for the release of the

sertion of a misstatement of the law as a fact by anyone professing to know the law. The first three prongs of the test are missing.

Under the test applied, there was no reversible error. The trial court did not abuse its discretion in overruling the amended motion for new trial under either Article 40.03, § 7 or § 8, V.A.C.C.P.

The judgment of the Court of Appeals is reversed, and the cause is remanded to said court to consider the remaining grounds of error.[8]

ODOM, Judge, dissenting.

It is the duty of this Court to uphold the constitution, not to subvert it. Yet subversion is the goal of the majority opinion as it puts this Court's seal of approval on lawlessness in the jury room.

In *Pena v. State,* 137 Tex.Cr.R. 311, 129 S.W.2d 667 (1939) the Court condemned prosecutorial jury argument regarding the parole law. The Court stated:

"... the jury, in a felony case, is not authorized to resort to or apply either the indeterminate sentence law or the parole law.... The parole law is not to be applied by the trial court, but is to be exercised by the board of pardons exclusively...."

A few years later, in *Price v. State,* 150 Tex.Cr.R. 161, 199 S.W.2d 168 (1946) the Court relied on *Pena v. State,* supra, when it held:

"If State's counsel could not argue to the jury the effect of the indeterminate sentence law, certainly a member of the jury could not do so."

Both *Pena* and *Price* were reversed.

More recently, the cases of *Heredia v. State,* 528 S.W.2d 847 (Tex.Cr.App.1975); *Sanders v. State,* 580 S.W.2d 349 (Tex.Cr. App.1978), and *Munroe v. State,* 637 S.W.2d 475 (Tex.Cr.App.1982), have all stated clearly and demonstrated beyond question that the rule prohibiting jury consideration of the parole law is based on fundamental constitutional principles. The majority opinion in a cavalier fashion dismisses this rule, apparently ignorant of its constitutional foundation. It is stated by the majority, "It makes little sense to say that, without more, *any* mention or discussion by jurors of the parole laws is always jury misconduct." The cases cited above did not state the rule "without more," as deceptively characterized by the majority. In this regard it must be deduced that *Munroe, Sanders,* and *Heredia,* although cited by the majority, were either not read or simply ignored. This conclusion suggests itself for the simple reason that all three cases make quite clear the constitutional basis of the rule. In *Sanders v. State,* supra, quoted in *Munroe v. State,* supra, this explanation was given:

" 'It would be improper for punishment to be based on an expectation that clemency powers would be exercised, and it

accused in less time than that discussed by the jury, reversible error was not reflected by the jury's discussion of the parole law."
In *Monroe v. State,* 644 S.W.2d 540, 543 (Tex. App. 5th Dist.—1982), the Dallas Court of Appeals wrote:
"The statement concerning good time credit, allowing one to serve a year in seven months is consistent with common knowledge and is generally the practice followed by the administration of the Texas Department of Corrections. Therefore, it is not a misstatement of the common practice.
"The statement that he is a good prisoner 'he wouldn't serve his full time' or 'would be off in a third of the time' given is a fairly accurate statement of the parole law as expressed. Tex.Code Crim.Proc.Ann. art 42.12, Sec. 15(b) (Vernon 1979)."

In *Jones v. State,* 462 S.W.2d 578, 580 (Tex.Cr. App.1970), the court said:
"A discussion of parole by a jury will not constitute reversible error, even where it is shown that the one or more jurors changed his or their votes as a result thereof, unless it be shown that the statement was a misstatement of the law." See also *Johnson v. State,* 418 S.W.2d 834 (Tex.Cr.App.1967); *De La Rosa v. State,* 167 Tex.Cr.R. 28, 317 S.W.2d 544 (Tex.Cr.App.1958); *Edwards v. State,* 427 S.W.2d 629 (Tex.Cr.App.1968).
In *Demolli v. State,* 478 S.W.2d 554, 555 (Tex. Cr.App.1972), the court stated there was no reversible error since "there is no showing ... that a juror professed to know the parole law and made a misstatement of the same."

8.  See footnote # one.

would be unconstitutional to attempt to delay the exercise of the clemency powers or to avoid the possible granting of parole by increasing punishment in anticipation thereof. Article II, Sec. 1 of the Texas Constitution provides for the separation of governmental powers among the three distinct departments, the executive, legislative, and judicial. It is well established under this Article that:

"(A) power which has been granted to one department of government may be exercised only by that branch to the exclusion of the others.... And *any attempt by one department of government to interfere with the powers of another is null and void.*" *Ex parte Giles,* Tex.Cr.App. 502 S.W.2d 774 [1973]; *Smith v. Blackwell,* Tex.Cr.App., 500 S.W.2d 97 [1973]. (Emphasis added).

'Clemency powers embodied in the parole system are beyond the reach of interference by the judicial branch, Art. IV, Sec. 11, Texas Const.; and any action by the judicial branch to frustrate or delay the exercise of the power by the executive branch is as much of an unconstitutional interference as is an attempted usurpation of that power. See, *Ex parte Giles* and *Smith v. Blackwell,* supra, for unconstitutional grants of authority to usurp clemency powers.

'This is the constitutional basis for the established rule that discussion of the parole law is always jury misconduct....' "

Why has the majority totally ignored this constitutional principle?

Why has the majority decided to launch this revolt against the law? The only hint of cause is the quoted concurring opinion from *Collins v. State,* 647 S.W.2d 719 (Tex. App. 13th Dist.1982), that there is an "increasing frequency [of] cases alleging reversible error as the result of a jury's discussion of parole." What reason is there in this? We should change the law merely because it has been relied on? Even if such a reason were valid, which it obviously is not, one might at least be required to document the "increased fre-

quency." In my own examination of the reported decisions of this Court there appear to be eleven reversals for jury discussion of the parole law. Of these, three are decisions rendered after *Heredia v. State,* supra, and eight pre-date *Heredia.* This hardly demonstrates a floodgate of reversals flowing from *Heredia.*

It is also necessary to ask the majority what reason is there for the five part test they now adopt? Although the majority quotes the paragraph of *Heredia* that states the two *extremes* of standards for reversible error, no justification is given for adopting the unreasonable extreme selected. Certainly no great support for adopting that extreme can be found in the case law. Of the eight reversals for discussion of the parole law that pre-date *Heredia,* only one, *Scaling v. State,* 499 S.W.2d 318 (Tex.Cr.App.1973), would meet the test adopted today. Perhaps the majority is not aware that its radical position overrules the reversals in *Meyers v. State,* 418 S.W.2d 676 (Tex.Cr.App.1967); *Moore v. State,* 171 Tex.Cr.R. 182, 346 S.W.2d 349 (1961); *Smith v. State,* 169 Tex.Cr.R. 315, 333 S.W.2d 385 (1960); *Mays v. State,* 167 Tex.Cr.R. 339, 320 S.W.2d 13 (1959); *Spriggs v. State,* 160 Tex.Cr.R. 188, 268 S.W.2d 191 (1954); *Jackson v. State,* 157 Tex.Cr.R. 323, 248 S.W.2d 748 (1952); and *Price v. State,* 150 Tex.Cr.R. 161, 199 S.W.2d 168 (1946), all of which are pre-*Heredia* cases reversed for jury discussion of the parole law and none of which would satisfy today's new test. Far from a return to an earlier *established* rule of law, the majority is opting for an *extreme position* from a *single aberration* for which no reason or justification is even attempted.

The "five prong" test adopted by the majority flies in the face of common sense. If the jury improperly considers the parole law during deliberations on punishment, the harm to the accused is not diminished simply because the parole law was correctly stated instead of misstated, or simply because it was not asserted as a fact or by one who did not profess to know the law. As stated in the dissent in *Beck v. State,*

573 S.W.2d 786 (Tex.Cr.App.1978), "... wild speculation is just as harmful regardless of whether anyone professes to know whether those speculations are law or not." It should also be obvious that an accurate statement of the parole law during jury deliberations can be just as harmful as an inaccurate one. Were it otherwise, it would not be error to include the parole law in the instructions to the jury, yet even the majority admit that it was proper to charge the jury "not to consider in deliberations on punishment how long he would be required to serve in order to satisfy the penalty assessed." Since it is proper for the court to instruct the jury *not* to consider the parole law, and since it is improper for the prosecutor to argue that the jury should consider the parole law (*Pena v. State,* supra), how in the name of justice and the Texas Constitution can the majority say it is permissible for the jury to subvert the parole law?

Judge Davidson, dissenting in *Salcido v. State,* 167 Tex.Cr.R. 173, 319 S.W.2d 329 (1959), stated:

"The action of the jury, together with the method employed in arriving at the punishment in this case, is susceptible of but one construction, that being that such action was a revolt by the jury against the commutation and good-behavior laws of this state and a denial to this appellant of the rights given him by those laws.

"The jury just simply did not want this appellant to receive the benefit of those laws, and took it upon themselves to fix a punishment that would prevent his receiving such benefit. Thus, the very body that were called upon to enforce the law and to preserve the right of trial by jury openly circumvented and took it upon themselves to deprive this appellant of his rights under the law.

" * * * *

"The legislature wrote into the statute law of this state the parole, commutation, and good-behavior laws whereby one convicted of crime could, by his ef-

forts, obedience, and behavior, earn credit upon his sentence.

" * * * *

"... Certainly, the right does not lay with the juries of this state to defeat or nullify those laws or to deny to one convicted of crime the benefits of such laws." (319 S.W.2d at 332–334).

Paraphrasing Judge Davidson's dissent in *Salcido,* the majority opinion today is susceptible of but one construction, that being that such opinion is a revolt against the parole law and the Texas Constitution; this very Court, which is sworn to uphold the Constitution, has taken it upon itself to nullify the separation of powers doctrine and to endorse lawlessness in the jury room. To such action I must dissent.

TEAGUE and MILLER, JJ., join this opinion.

CLINTON, Judge, dissenting.

Once jurors were selected, the judge of the trial court administered the oath statutorily prescribed by Article 35.22, V.A.C.C.P.

"You and each of you do solemnly swear that in the case of the State of Texas against the defendant, you will a true verdict render *according to the law* and the evidence, so help you God." [1]

One matter of law on which the trial court instructed the jury at the punishment phase was plainly stated, *viz:*

"You are instructed that you will not consider the amount of time the defendant will have to serve under any sentence you may assess, *because such matters come within the exclusive jurisdiction of the Governor acting through the office of the Board of Pardons and Paroles.*"

Thus, each juror was given to understand that the length of time to serve whatever punishment the jury chose to assess was not a matter to be considered in the jury room. Obviously, several jurors violated their sworn duty to follow the law. Now,

---

**1.** All emphasis is added throughout by the writer of this opinion unless otherwise indicated.

however, a majority of the Court is about to exonerate them. I respectfully dissent.

The so-called "five-prong test" for which the majority opts was "stated and discussed, but rejected" by the Court in *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr.App. 1975). *Sanders v. State*, 580 S.W.2d 349 (Tex.Cr.App.1979) (Dally, J., dissenting, joined by Onion, P.J., Douglas and W.C. Davis, JJ.). In *Munroe v. State*, 637 S.W.2d 475 (Tex.Cr.App.1982) the Court again refused to adopt "the five-prong test of *Heredia*"—over the protestations of Judge Dally, joined by Onion, P.J., W.C. Davis and McCormick, JJ. *Munroe v. State*, supra, at 485–486.

At risk here is a sound fundamental doctrine of government forever insisted on by our forebearers and framers of our constitutions, beginning with the Republic of Texas in 1845—separation of powers among three distinct departments. Constitution of the Republic of Texas, Article I, Section 1, 3 Vernon's Texas Constitution 523; Constitution of the State of Texas (1876), Article II, Section 1, 1 Vernon's Texas Constitution 521–522; *Munroe v. State*, supra, at 477; *Sanders v. State*, supra, at 351–352; *Heredia v. State*, supra, at 853, n. 4. Under Article IV, Section 11, "[t]he decision to parole, if and when made, is beyond the province of the courts ... and therefore of the jury, and is exclusively a matter within the province of the executive branch of government, under proper regulation by the legislative branch," *Heredia*, supra. The instruction to the jury in that regard given by the trial court in the case at bar is impeccably designed to prevent mischief by aggressive jurors, and to keep from harm's way the doctrine of separation of powers.

After reviewing the facts of the matter the Amarillo Court of Appeals found that "it affirmatively appears from the record that the parole law was discussed extensively without constraint, and that at least three jurors increased appellant's punishment because of the discussion. The uncontradicted affirmation is that appellant's punishment was increased in

expectation that clemency powers would be exercised."

*Sneed v. State*, 625 S.W.2d 761, 763 (Tex. App.—Amarillo 1981). Accordingly, applying principles enunciated by the Court in, e.g., *Heredia* and *Sanders*, the court of appeals concluded that jury discussion of the parole law was detrimental to appellant and did constitute such misconduct as to deprive him of a fair and impartial trial in violation of Article 40.03(8), V.A.C.C.P. Reversing the judgment of conviction on that account, the Amarillo Court did not reach the issue raised under Article 40.-03(7).

Today, a majority of this Court is able to reverse the court of appeals only by retrogressively changing the rules extant at time of trial and direct appeal. In the doing it diminishes the right to a fair and impartial trial with assessment of punishment by jurors adhering to the solemn oath taken by each to render a true verdict *according to law*.

I must dissent.

TEAGUE and MILLER, JJ., join.