TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00425-CR







Marc Anthony Brown, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0935295, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of murder. Penal Code, 63d Leg., R.S., ch. 399,
sec. 1, § 19.02, 1973 Tex. Gen. Laws 883, 913, amended by Act of May 28, 1973, 63d Leg.,
R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1123 (Tex. Penal Code Ann. § 19.02,
since amended). The jury assessed punishment at imprisonment for fifty-seven years.

 Appellant does not question the sufficiency of the evidence to sustain the
conviction, but he does contend the district court erred by refusing to instruct the jury on the
lesser included offense of voluntary manslaughter. Appellant also contends the court gave an
improper supplemental charge and erroneously overruled appellant's motion for new trial. We
will affirm.

 Appellant and the deceased, Edrick Hill, were drug dealers. Hill believed that
appellant had been encroaching on Hill's sales territory. In his testimony, appellant described past
encounters with the deceased in which Hill pointed a gun at him and threatened to kill him if he
continued to sell drugs in Hill's area. Appellant testified that he was afraid of Hill and purchased
a pistol to protect himself from Hill. 

 On the afternoon of April 7, 1993, Hill and appellant had a confrontation at the
corner of Walnut and Manor in Austin. Hill told appellant that he was not allowed to sell drugs
at that location. Appellant testified that he told Hill he had only a few rocks of crack cocaine left
and asked if he could sell them. Hill said no and then:



A Then he raised up his hands about in this motion and said, what did I tell you
before. He started reaching for his shirt and pulled up his shirt and was
reaching in his waist and pulling out a gun.


Q And what happened after that?


A Then after that when I seen him reaching and pulling out his gun, I pulled out
mine and shot him first.


. . .


Q What did you see Edrick Hill doing after you shot him the first time?


A After I shot him the first time, I seen him grab his stomach and bend over and
trying to pull from up underneath his shirt still his gun, and then I had -- was
about to run, but when I was in the process of running, I was on the side of
him and I shot again.



 Other witnesses to the incident confirmed that Hill and appellant argued over
appellant selling drugs at this particular location. Goldia Earls testified:



A What I can remember, Marc [sic] asked him what the big deal was of why he
was trying to make such a fuss about him selling up there when everyone sells,
there was no one's name written on any ground . . . .


. . .


 After that, Marc said -- asked him, you know, was that the end of it or
what. Edrick asked him if he was going to have to go get his posse or his gang to
try to help him along or what. Marc told him, no, he didn't need them.


Q And what happened next?


A That was when he pulled the gun out.


Q Who pulled the gun out?


A Marc.


. . .


Q And when Marc pulled the gun, what did Edrick do?


A He stood there.


Q Did he have his arms still crossed or down or was he doing something else
with them?


A From what I remember, his hands was at his side.


Q Okay. When Marc pulled the gun, what did he do with it?


A He put it to his temple of his head.


Q To whose head?


. . .


A To Edrick's, and gave a push motion with the gun.


. . .


Q And then what happened?


A Edrick stumbled, stepped back one step. Marc pulled the gun, shot him in the
abdomen. . . .


. . .


Q Did Edrick fall down when he was shot?


A He grabbed his abdomen and he stumbled over toward -- closer toward the
street, and he was going down this way and he went to the ground, eased to
the ground.


. . .


Q What happens next?


A As I approached him, I was going to kneel down to him to see if I could
comfort him somehow. Marc walked up to me, pushed me back with this
motion. I moved back this way, and Marc put the gun to his head right here
and he shot him twice in the head.



 Another witness to the shooting, Barbara Jackson, testified:



A Well, I heard Edrick tell Marc that he couldn't sell there because that was his
territory and Marc said that he didn't know there was any territories around,
that he was going to sell there if he wanted to.


. . . 


Q All right. Did you hear him say anything else?


A I heard Edrick say, well, if he sold any here, he wasn't going to sell no more,
that he would see to it.


. . .


Q Do you know -- tell the jury, please, describe for the jury exactly what
happened immediately before the gun was pulled out and as the gun was pulled
out, to your knowledge and recollection.


A Well. okay. What happened, they were arguing, and then Edrick turned
around like he was getting ready to go, halfway turned, and that is when Marc
pulled a gun out and shot him in the stomach.


Q Okay. And when he shot him in the stomach, what happened?


A He fell down. He grabbed his stomach and he fell down. And then Marc, he
pushed Goldia a little bit out of the way and he leaned over and shot him twice
in the head.


Q Now, did you see Edrick pull anything out of his waistband or anywhere?


A No. Nowhere that I saw at all, he didn't pull nothing out.



 At the time appellant shot Hill, a person committed voluntary manslaughter if he
caused the death of an individual under circumstances that would constitute murder, except that
he caused the death under the immediate influence of sudden passion arising from an adequate
cause. Penal Code, 63d Leg., R.S., ch. 399, sec. 1, § 19.03, 1973 Tex. Gen. Laws 883, 913,
amended by Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws
1122, 1124 (Tex. Penal Code Ann. § 19.04(a), since amended). "Sudden passion" means passion
directly caused by and arising out of provocation by the deceased occurring at the time of the
offense. Sec. 19.04(b). "Adequate cause" means cause that would commonly produce a degree
of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind
incapable of cool reflection. Sec. 19.04(c). A defendant is entitled to a voluntary manslaughter
instruction if there is any evidence, however weak or implausible, that could support a rational
jury finding that he acted under the immediate influence of sudden passion arising from an
adequate cause. Gold v. State, 736 S.W.2d 685, 688 (Tex. Crim. App. 1987).

 The district court instructed the jury on the use of deadly force in self-defense. 
When the evidence raises self-defense, before it may be said that it also raises voluntary
manslaughter, there must be some additional showing, apart from the circumstances themselves,
that appellant was in fact enraged, resentful, or terrified. Brunson v. State, 764 S.W.2d 888, 895
(Tex. App.--Austin 1989, pet. ref'd).

 Appellant relies on the opinion in Liveoak v. State, 717 S.W.2d 691, 698-99 (Tex.
App.--San Antonio 1986), pet. ref'd, 741 S.W.2d 451 (Tex. Crim. App. 1987). The issue in that
case was whether the evidence supported the defendant's conviction for voluntary manslaughter. 
There was evidence that the victim had a reputation for violence and had threatened the defendant
on other occasions. On the day of the offense, the victim "verbal[ly] castigat[ed] and
threat[ened]" the defendant. Later, the victim grabbed the defendant by the head, lifted him off
the ground, and threw him against his car. He began to choke the defendant and threatened to kill
him. The defendant testified that he then shot the victim to save his own life. The court of
appeals held this evidence was sufficient to sustain a jury finding of sudden passion arising from
adequate cause.

 The State refers us to the opinion in Gonzales v. State, 717 S.W.2d 355, 356-58
(Tex. Crim. App. 1986). The evidence in that case indicated that the defendant witnessed a
confrontation in a nightclub between his friend and the victim. The defendant left the club and
waited for his friend in the friend's car. The victim also left the club, walked to his own car, and
retrieved something from the trunk. The defendant picked up his friend's pistol, got out of the
car, and began to walk away. The victim came up behind him and fired a shot. The defendant
turned and shot the victim. The defendant indicated that he had been scared of the victim. The
court held that this evidence did not entitle the defendant to an instruction on voluntary
manslaughter.

 Taking appellant's testimony at face value, there is some evidence in this cause that
Hill had previously threatened and assaulted appellant, and that he was reaching for a gun when
appellant shot him. But appellant also testified, "I wasn't the one that was upset. I was more like
I was scared at the time and terrified for my life that he would try to kill me. I was trying to
reason with him instead of having an argument with him." A claim of fear does not raise an issue
of sudden passion arising from adequate cause unless it rises to the level of terror sufficient to
render the mind incapable of cool reflection. Gonzales, 717 S.W.2d at 357. By his own account,
appellant was afraid of Hill but also trying to reason with him. Such a claim is inconsistent with
a finding that appellant was incapable of cool reflection. 

 Considered as a whole, the evidence would not support a rational jury finding that
appellant shot Hill in a fit of sudden passion arising from an adequate cause. The district court
did not err by instructing the jury on self-defense but refusing to instruct on voluntary
manslaughter. Point of error one is overruled.

 After the jury reported that it was deadlocked, the district court gave the following
supplemental instruction over appellant's objection:



 You are instructed that in a large proportion of the cases absolute certainty
cannot be expected. Although the verdict must be the verdict of each individual
juror, and not a mere acquiescence in the conclusion of other jurors, each juror
should show a proper regard to the opinion of each other.


 You should listen, with an open mind, to the arguments of the other jurors. 
If a large number of jurors are for deciding the case one way, those in the minority
should consider whether they are basing their opinion on speculation or surmise
and not on the evidence in the case, keeping in mind the impression the evidence
has made on a majority of the jurors of equal honesty and intellect as the minority.


 Bear in mind also that if you do not reach a verdict in this case that a
mistrial will be granted and that the case can be tried again to a different jury, but
that the next jury will be in no better position to decide the case than you.


 Therefore, you are instructed that it is your duty to decide the case if you
can conscientiously do so. You will now retire and continue your deliberations.


In his second point of error, appellant urges that this instruction failed to tell the jurors that they
should individually decide the case on the basis of the evidence and not surrender their honest
convictions unless convinced of their error by fellow jurors, and thus tended to coerce the jurors
in the minority into yielding to the views of the majority. 

 Appellant's argument is refuted by a reading of the instruction. The district court
advised the jurors that "the verdict must be the verdict of each individual juror, and not a mere
acquiescence in the conclusion of other jurors." The court further instructed the jurors to reach
a verdict "if you can conscientiously do so." Such language was sufficient to dispel any notion
that the jurors in the minority should defer uncritically to the views of the majority. 

 The challenged instruction is similar to that approved by the Supreme Court in
Allen v. United States, 164 U.S. 492, 501-02 (1896). It is also similar to "dynamite charges"
approved in other cases. Calicult v. State, 503 S.W.2d 574, 575-76 (Tex. Crim. App. 1974);
Arrevalo v. State, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973); Boyd v. State, 644 S.W.2d 857,
858 (Tex. App.--Tyler 1982, no pet.). It is virtually identical to the charge recommended in a
leading form book. 8 Michael J. McCormick, Thomas D. Blackwell, & Betty Blackwell,
Criminal Forms & Trial Manual § 96.31 (Texas Practice 10th ed. 1995). Point of error two is
overruled.

 Finally, appellant contends the district court should have granted his motion for
new trial on the grounds that the jury received other evidence and engaged in misconduct during
its punishment deliberations. Tex. R. App. P. 30(b)(7), (8). Specifically, appellant urges that
the jury improperly considered the law of parole in assessing punishment.

 Appellant acknowledges that the present test for reversible error based on the jury's
discussion of parole is that set forth in Sneed v. State, 670 S.W.2d 262, 266 (Tex. Crim. App.
1984). Under Sneed, the defendant must prove each of the following: (1) a misstatement of the
law, (2) asserted as a fact, (3) by one professing to know the law, (4) which is relied on by other
jurors, (5) who for that reason change their vote to a harsher punishment. Appellant makes no
effort to demonstrate that he met the burden imposed on him by Sneed, and our review of the
testimony at the new trial hearing discloses that he did not. Instead, appellant argues that Sneed
has been rendered obsolete by the enactment of the statutory instruction on the law of good time
and parole. Tex. Code Crim. Proc. Ann. art. 37.07, § 4 (West Supp. 1995). Appellant urges
us to abandon Sneed and to adopt the test proposed by the plurality opinion in Munroe v. State,
637 S.W.2d 475, 478 (Tex. Crim. App. 1982): any discussion of parole constitutes jury
misconduct and reversal is required if a single juror votes for a harsher punishment as a result of
the discussion.

 The Court of Criminal Appeals has stated that "the test adopted in Sneed is still a
viable means of determining whether a jury's discussion of parole law constitutes reversible
error." Buentello v. State, 826 S.W.2d 610, 614 (Tex. Crim. App. 1992). As an intermediate
appellate court, we are not at liberty to disregard the pertinent opinions of the Court of Criminal
Appeals. Relying on Buentello, we recently applied the Sneed test in overruling a point of error
complaining of a jury's consideration of parole and good conduct time in assessing punishment. 
Valdez v. State, 893 S.W.2d 721 (Tex. App.--Austin 1995, pet. ref'd). Because there is no
evidence that a juror voted for a harsher punishment in reliance on a misstatement of the law of
parole asserted as fact by another juror who professed to know that law, we overrule points of
error three and four.

 The judgment of conviction is affirmed.


Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: September 13, 1995

Do Not Publish



re, you are instructed that it is your duty to decide the case if you
can conscientiously do so. You will now retire and continue your deliberations.


In his second point of error, appellant urges that this instruction failed to tell the jurors that they
should individually decide the case on the basis of the evidence and not surrender their honest
convictions unless convinced of their error by fellow jurors, and thus tended to coerce the jurors
in the minority into yielding to the views of the majority. 

 Appellant's argument is refuted by a reading of the instruction. The district court
advised the jurors that "the verdict must be the verdict of each individual juror, and not a mere
acquiescence in the conclusion of other jurors." The court further instructed the jurors to reach
a verdict "if you can conscientiously do so." Such language was sufficient to dispel any notion
that the jurors in the minority should defer uncritically to the views of the majority. 

 The challenged instruction is similar to that approved by the Supreme Court in
Allen v. United States, 164 U.S. 492, 501-02 (1896). It is also similar to "dynamite charges"
approved in other cases. Calicult v. State, 503 S.W.2d 574, 575-76 (Tex. Crim. App. 1974);
Arrevalo v. State, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973); Boyd v. State, 644 S.W.2d 857,
858 (Tex. App.--Tyler 1982, no pet.). It is virtually identical to the charge recommended in a
leading form book. 8 Michael J. McCormick, Thomas D. Blackwell, & Betty Blackwell,
Criminal Forms & Trial Manual § 96.31 (Texas Practice 10th ed. 1995). Point of error two is
overruled.

 Finally, appellant contends the district court should have granted his motion for
new trial on the grounds that the jury received other evidence and engaged in misconduct during
its punishment deliberations. Tex. R. App. P. 30(b)(7), (8). Specifically, appellant urges that
the jury improperly considered the law of parole in assessing punishment.

 Appellant acknowledges that the present test for reversible error based on the jury's
discussion of parole is that set forth in Sneed v. State, 670 S.W.2d 262, 266 (Tex. Crim. App.
1984). Under Sneed, the defendant must prove each of the following: (1) a misstatement of the
law, (2) asserted as a fact, (3) by one professing to know the law, (4) which is relied on by other
jurors, (5) who for that reason change their vote to a harsher punishment. Appellant makes no
effort to demonstrate that he met the burden imposed on him by Sneed, an