Richard Scott KEADY, Appellant,

v.

The STATE of Texas, Appellee.

No. 62147.

Court of Criminal Appeals of Texas.

March 27, 1985.

Timothy A. Tyler, Bellaire, for appellant.

Carol S. Vance, Former Dist. Atty., Larry P. Urquhart, Former Asst. Dist. Atty., John B. Holmes, Jr., Dist. Atty., Roberto Gutierrez and James M. Wilkinson, Asst. Dist. Atty's, Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

A jury convicted appellant of burglary of a habitation and assessed punishment, en-

hanced by one prior felony conviction, at 50 years' confinement.

Appellant contends that the trial court erred in overruling his motion for new trial, which was based upon alleged jury misconduct, and in denying his motion to quash the indictment.

The jury misconduct at issue revolves around the jurors' discussion of parole. At the hearing on the motion for new trial, five jurors, one for the defense and four for the State, testified about the jury's discussion at the penalty stage of the trial.

Juror Cunningham testified that she had been the foreman of the jury in appellant's case. She said that after the jury retired to decide punishment, she read the court's charge to the jurors, including the part that instructed the jurors not to discuss or consider parole or the possibility of parole. An initial vote on punishment was taken, which showed Cunningham and juror Guidry voting for 15 years, juror Eastepp voting for 99 years, and everyone else voting for around 60 years.

Cunningham said that parole was mentioned several times and each time it was mentioned she instructed the jurors not to discuss it. She testified that one of the jurors said that a man sentenced to life in prison could be eligible for parole in 12 years, and that another juror said that if a sentence of 99 years was imposed a man could be eligible for parole in 7 years.

Cunningham admitted that she knew that parole existed. She said that it seemed to be common knowledge among the jurors that parole existed. However, she believed the statements concerning the 12 and 7 years because they were so specific.

Cunningham testified that juror Lampton told her that if a mistrial resulted from a hung jury, appellant would walk out free. Cunningham interpreted this to mean that appellant could not be retried, although that possibility was never explicitedly mentioned. Because of this statement and the parole discussions she changed her vote to 50 years, which was the sentence eventually imposed upon appellant.

Juror Lampton testified that parole was mentioned casually several times and that each time it was mentioned someone said that they were not supposed to talk about it, and the discussion would end. He said that no one professed to know what the parole laws were and that the 12 and 7 years mentioned were "guesstimates" and not facts, because nobody really knew. Lampton also said that there was a discussion with Cunningham to the effect that if they assessed appellant 50 years, they had to look at it as if he would be in prison for fifty years. The jurors actually calculated how old appellant would be at the end of the fifty years in prison. Lampton said that Cunningham was asked specifically if she could give 50 years as her verdict. She said she could do so.

Lampton testified that Cunningham mentioned the possibility of a hung jury at a time when the jury was deadlocked. He told her "... something ... in effect, well then, would you want him to walk out of here free. And she said no and then we went on." He said he never implied in any way that appellant would not be retried again, and that impression was not discussed.

Juror Guidry testified that he had initially voted for 15 years' confinement, but had changed his vote to 50 years' after discussion of the facts and circumstances of the case. Guidry was aware that parole existed. He said that parole was discussed several times, and that each time it was mentioned somebody would remind them they were not supposed to discuss it. A couple of people expressed opinions as to how long someone would serve on a 99 year or life term, but no one really knew the parole laws.

Guidry also said that he recalled some mention about a hung jury, but it was unimportant to him or mentioned so little that it did not make any impression. He testified that Cunningham was specifically asked if she could agree to the 50 year verdict and she said she could.

Juror Eastepp was the third juror called by the State. He said that parole was mentioned from time to time during the deliberations, but that each time it was mentioned someone would remind the jurors that they were not to discuss it. Eastepp admitted he had made a statement that he had heard that a person sentenced to life would be eligible for parole in 12 years. However, he said that he did not know about parole eligibility. Eastepp testified that one of the jurors emphasized that, when they arrived at a final verdict, they would consider that sentence assessed as the time appellant would actually serve.

Eastepp also heard some mention about a hung jury, but he did not remember what the statement was and was not influenced by the remark.

The last juror called by the State was Crellin. He testified that parole was discussed several times and that each time someone admonished the jurors not to discuss it. Crellin also testified that they discussed the fact that the 50 years had to be considered as straight time and that parole could not be considered. He said that this was said specifically to Cunningham and that she said she would abide by the 50 year verdict.

Crellin said that nobody had any definite information or knowledge about parole, but everyone seemed to know it existed.

■ In *Sneed v. State*, 670 S.W.2d 262 (Tex.Cr.App.1984) this Court re-adopted the five-prong test of pre-*Heredia*[1] cases to determine whether or not a jury's discussion of the parole law constitutes reversible error. To show reversible error there must be:

"(1) a misstatement of the law
"(2) asserted as a fact
"(3) by one professing to know the law
"(4) which is relied upon by other jurors
"(5) who for that reason changed their vote to a harsher punishment."

*Sneed,* supra at 266. This test applies to cases under either section 7 or section 8 of Art. 40.03, V.A.C.C.P.

In applying this test to the instant case we find that: The existence of parole was common knowledge among the jurors; parole was discussed several times during the deliberations, and each time it was discussed Cunningham told the jurors they were not supposed to discuss it; of the five jurors who testified at the hearing, only Cunningham said that she relied on the parole discussion and changed her vote because of the discussion about a hung jury and about parole; none of the jurors professed to know the law relating to parole and none of the jurors expressed their views as anything more than speculative opinion or "guesstimates", although Cunningham indicated that she thought the statements were true because they were so specific. Cunningham also admitted that she disregarded the very instructions which she, as foreman, had read to the jury, and of which she constantly reminded the other jurors, namely, that parole should not be considered.

The testimony of the other jurors contradicts Cunningham's version of the discussion, to some extent. The other four jurors who testified stated that they discussed the fact that the 50 year term had to be considered as straight time, and that Cunningham was specifically asked and agreed to that.

At the hearing, Cunningham admitted that she thought appellant had received a more severe sentence than he deserved and that was one reason why she was testifying.

■ Issues of fact involving jury misconduct raised at a hearing on motion for new trial are for the determination of the trial judge, and there is no abuse of discretion in overruling the motion when there is conflicting evidence. *Sneed,* supra; *McCartney v. State,* 542 S.W.2d 156 (Tex.Cr.App. 1976). All of the jurors who testified, except Cunningham, said that no juror professed to know the law or asserted, as fact, an opinion about parole. The trial judge

---

1. *Heredia v. State,* 528 S.W.2d 847 (Tex.Cr.App. 1975).

apparently chose to believe the other jurors. Thus, although the statements made about parole were not accurate, they were "guesstimates" and not statements made by one professing to know the law. Therefore, at least two of the five prongs of the *Sneed* test, (nos. 2 & 3), have not been met in regard to the parole discussion.

■ Cunningham said she changed her vote because of the parole discussion and the hung jury comment. While it may not be improper, under 40.03, (7) or (8), V.A.C. C.P., for the judge or another juror to encourage a jury to continue deliberating by telling them that a mistrial will result,[2] it would certainly be improper and incorrect to tell them that the defendant could not be retried in such event. Cunningham said that she interpreted Lampton's comment about a hung jury to mean appellant could not be retried. Lampton testified that he never stated nor implied that appellant could not be retried. The other four jurors who testified either did not recall the comment about the hung jury or did not interpret it to mean that appellant could not be retried. The remark was apparently open to differing interpretation—Lampton's and Cunningham's. The trial judge resolved the conflict or ambiguity against appellant. Where questions of fact are at issue, the trial judge is the final word, absent abuse of discretion. *McCartney,* supra. The ground of error is overruled.

In his second and final ground of error, appellant contends that his motion to quash the indictment should have been granted. The indictment alleged, in pertinent part, that appellant "... did then and there unlawfully with intent to commit theft, enter a habitation...." Appellant contends that a culpable mental state must be alleged in connection with the "habitation" element of the offense. He argues that *Teniente v. State,* 533 S.W.2d 805 (Tex.Cr.App.1976) is not controlling because no motion to quash was involved there. We disagree.

■ The rationale of *Teniente* applies whether the allegation be one of fundamental error or non-fundamental error. The conduct that is the gist of the offense of burglary is the entry with the requisite intent, not the physical act of entering. See *Denison v. State,* 651 S.W.2d 754 (Tex. Cr.App.1983). The ground of error is overruled and the judgment is affirmed.

MILLER, J., concurs in result.

TEAGUE, Judge, concurring.

When one of our citizens has established that he did not receive the fair and impartial trial by jury which the Constitution of this State guarantees him, as to both guilt and the assessment of punishment, and he receives no relief on appeal, it should be an extremely sad day for all Texans. Today, all State flags should be lowered to half-mast.

In this instance, Richard Scott Keady, appellant, has established that he did not receive the fair and impartial trial by jury the Constitution of this State guaranteed him—on the issue of what punishment the jury should have assessed. But he receives no relief. Why is this?

It is because of this Court's majority decision of *Sneed v. State,* 670 S.W.2d 262 (Tex.Cr.App.1984), which is authority for overruling appellant's ground of error, that because of jury misconduct that occurred in this cause he was denied a fair and impartial trial by jury on the issue of punishment. I am therefore compelled and constrained, because of the doctrine of stare decisis, to concur in the result the majority reaches.

However, the facts of this cause truly reflect why *Sneed v. State,* supra, should be expressly overruled.

The record reflects the following:

Most, if not all, of the jurors in this cause ignored and violated the trial court's oral and written instructions that they were not to discuss among themselves how

---

**2.** Compare an "Allen" charge which informs the jury that a hung jury will result in a mistrial. *Arrevalo v. State,* 489 S.W.2d 569 (Tex.Cr.App. 1973). The "Allen" charge usually also informs the jury that the defendant can be retried. The "hung jury" remark, alone, is not improper.

long appellant would be required to serve whatever punishment the jury assessed. The record clearly reflects that the jurors, when they were deliberating on what punishment to assess appellant, many times discussed among themselves how long appellant would be incarcerated before he might be released on parole. The jury foreperson's testimony was undisputed, unrefuted, and unrebutted. She testified that because she relied upon the discussions the other jurors had regarding when appellant might be released on parole, she eventually agreed to the 50 year sentence that was assessed by the jury. By the express provisions of Art. 40.03 (7), V.A.C.C.P., also see *Garza v. State*, 630 S.W.2d 272 (Tex. Cr.App.1982), this constituted the receipt of other evidence which had not been admitted during appellant's trial; thus, appellant was entitled as a matter of law to a new trial. But in *Sneed v. State*, supra, a majority of this Court, poaching in a field reserved by the Constitution to the Legislative Department of this State, overruled what the duly elected members of the Legislature had enacted.

In *Salcido v. State*, 167 Tex.Cr.R. 173, 319 S.W.2d 329 (Tex.Cr.App.1959), Judge Davidson of this Court stated the following, which words are applicable to this cause: "The action of the jury ... is susceptible of but one construction, that being that such action was a revolt by the jury against the commutation and good-behavior laws of this state and a denial to this appellant of the rights given him by those laws. The jury just simply did not want this appellant to receive the benefit of those laws, and took it upon themselves to fix a punishment that would prevent his receiving such benefit. Thus, the very body that were called upon to enforce the law and to preserve the right of trial by jury openly circumvented and took it upon themselves to deprive the appellant of his rights under the law."

I file this concurring opinion solely to make it clear to all that it should be a sad day, not only for all Texans, but especially for those jurors who sat in this cause and violated his or her oath of office-to such an extent that appellant was denied that precious right which the Constitution of this State grants to all of his, namely, the right to receive a fair and impartial trial by jury-on guilt as well as punishment-which right, as to the proper assessment of punishment, appellant has yet to receive.

CLINTON, Judge, dissenting.

That jurors did receive other evidence and did engage in misconduct during their deliberations in the jury room cannot be seriously disputed. Just that which the opinion of the Court summarizes on page 759 demonstrates that they ignored and disregarded instructions of the trial court intentionally, knowingly and recklessly—and, yes, repeatedly. Yet, appellant is denied a remedy because a majority of this Court has made it virtually impossible for him and any other accused similarly situated "to show reversible error."

*Sneed v. State*, 670 S.W.2d 262 (Tex.Cr. App.1984), sanctions a violation of their oath by jurors, Article 35.22, V.A.C.C.P., and an infringement of the doctrine of separation of powers by the jury as a body. *Sneed v. State*, supra, at 267–269 (Odom, J., dissenting), and at 269–270 (Clinton, J., dissenting).

The situation is reminiscent of days when participants in the criminal justice system pretended that parties did not engage in plea bargaining, so they continued the practice without let or hindrance by statutory regulation or rule. Similarly, knowing that jurors are wont to "discuss" the law of parole, even when shown on the record that they have in fact done so judges look the other way lest they see that what was said *is* other evidence and the discussion *is* misconduct. And if the fact that there was discussion of parole cannot be thus avoided, then the ambit is to find "conflicting evidence" in the record of hearing of motion for new trial, and solemnly pronounce that "the trial judge is the final word, absent abuse of discretion," Opinion, p. 760. Call the next case!

Once it was accepted that parties were to be trusted to deal with each other at arm's length, the plea bargaining process was given some measure of respectability by legislative recognition and direction. See Articles 23.16(a)(2) and 44.02, V.A.C.C.P. Let us accept that jurors are reasonable and sensible persons who can be trusted to follow their oath and instructions from the trial court *when they are made to understand the reason they are not to discuss parole.*

There is a school of thought that jurors fail to take seriously the stock instruction not to consider or discuss possible action of the Board of Pardons and Paroles because they do not understand the policy behind it and, indeed, may well believe that the intent of such an instruction is to hide something from them. ("Well, outside we read and hear about it all the time, so why does the judge tell us not to talk about it in the juryroom?") It follows that jurors would be better informed and equipped to remove operation of parole laws from consideration during their deliberations if and when they are given a common sense reason for doing so. And the most practical reason from the perspective of a layman is that *no one in this State can predict when an inmate will be released on parole, or whether one will ever be released on parole at all!*

When the pattern instruction is given the trial court should add an explanation of the reason the matter should not be considered, somewhat along the following lines, *viz:*

"Further you are instructed that the determination to grant parole, if and when made, rests on many facts and events not now known, for the simple reason that they have not yet occurred at time of trial. Since it cannot be predicted at this time when or even whether parole will be granted, you are not to mention, refer to, discuss or consider how long the defendant might be required to remain confined to serve the punishment you assess and the sentence the court will impose. Such matters come within the exclusive jurisdiction to be exercised at some time in the future by the Board of Pardons and Paroles, and to some extent by the Governor of this State, and they are beyond the province of courts and, therefore, of the jury as well."

See *Heredia v. State,* 528 S.W.2d 847, 853, n. 4 (Tex.Cr.App.1975).

Against a burden of prospective hearings on new trial, appeals, reversals, retrials and successive appeals, the potential benefits of giving a jury accurate and complete information as to the truth of the matter loom large, and any additional chore imposed on administering the criminal justice system at the trial level is minuscule.

Because by adhering to *Sneed* the majority will not lead the way out of this morass of jury misconduct, I dissent.