Lawrence HOWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–87–00255–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1988.

Rehearing Denied Aug. 31, 1988.

John F. Carrigan, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Roe Morris, Asst. Dist. Atty., for appellee.

Before WARREN, DUGGAN and LEVY, JJ.

## OPINION ON REHEARING

LEVY, Justice.

Our opinion dated March 17, 1988, is withdrawn, and the following is substituted.

A jury found appellant guilty of murder and assessed punishment at 40 years confinement. Appellant appeals this conviction, asserting 10 points of error.

Appellant went to the Fast Times nightclub in Pasadena, Harris County, on August 16, 1986. Around 1 a.m., he became involved in a fight outside the nightclub, which was broken up by employees of the nightclub. Appellant and some of his friends then left in his car.

Phillip Merwin, who apparently had not been a party to the fight, also drove away from the club, along with a group of his friends. Both Merwin's and appellant's car happened to stop side-by-side at a traffic light. While stopped, appellant exited his car and threw a wrench that broke the driver's window of Merwin's car and hit Merwin in the head. Merwin tried to escape by accelerating and making a u-turn. He was followed by appellant who, along with his passengers, threw things at Merwin's car.

During the chase, Merwin stopped in order to back up the street, but his car's engine died. Appellant then exited his car and approached Merwin's. As the appellant approached, Merwin attempted to start his car while his friends ran from the scene. Upon reaching the car, appellant asked Merwin to give back his wrench.

While Merwin looked for the wrench, Newton, one of Merwin's former passengers, returned and told appellant to leave Merwin alone. Appellant responded by holding a gun on Newton, telling him to get away from him. Newton retreated, and Merwin handed the appellant his wrench. As appellant was walking back to his parked car, another automobile collided with it. Appellant then raised his arm and fired the gun.

Holly Abel, a bystander whom appellant testified he did not know, was hit by the shot and fell to the ground, eventually dying from the shooting. After firing the shot, appellant ran to his car and left the scene.

In his first four points of error, appellant asserts that the evidence was insufficient to support his conviction and that, as a result, he was deprived of his liberty as guaranteed by both the United States and Texas Constitutions. He further urges that the trial court erred in failing to set aside his conviction on sufficiency grounds, as requested in his motion for new trial.

Appellant contends that the evidence at trial raised the issue of "sudden passion," thereby rendering the evidence insufficient to support the murder verdict because the absence of "heat of sudden passion" had not been proved by the State. Appellant argues that the evidence was, at best, sufficient to show merely voluntary manslaughter.

> [W]hen the evidence raises the issue of "sudden passion," its negation becomes an "implied element" of murder. Sudden passion is, in essence, a circumstance surrounding the forbidden conduct ... the existence of which the State must refute beyond a reasonable doubt.
>
> ... Should the evidence raise "sudden passion," the absence thereof would constitute a "fact" which is engrafted upon the elements of murder ... and must be established beyond a reasonable doubt before a murder conviction can be obtained.

*Bradley v. State*, 688 S.W.2d 847, 851 (Tex. Crim.App.1985) (citations omitted).

■ Due process of law requires the prosecution to prove beyond a reasonable doubt the *absence* of heat of passion on sudden provocation when the issue has been properly presented in a homicide case. *Mullaney v. Wilbur*, 421 U.S. 684, 705, 95 S.Ct. 1881, 1893, 44 L.Ed.2d 508 (1975).

> Until sudden passion is raised, however, its absence does not become an element of murder, implied or otherwise. Hence, there is no "fact" the lack of which will reduce the offense to voluntary manslaughter.... In short, unless there is some evidence of sudden passion in the

case, voluntary manslaughter cannot be considered a lesser included offense of murder.

*Bradley,* 688 S.W.2d at 851 (citations omitted).

Section 19.04 of the Texas Penal Code provides that a person commits an offense if he causes the death of a person under circumstances that would constitute murder, except that the conduct resulting in death arises under the immediate influence of sudden passion arising from an adequate cause. Tex.Penal Code Ann. § 19.04(a) (Vernon 1974). Subsection (b) provides that "sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Subsection (c) of 19.04 defines adequate cause as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."

Appellant urges that all the evidence from every source supported the element of sudden passion. He testified that he was mad, afraid, and upset when the shot was fired. Appellant testified at trial that he did not even see Abel at the time of the shooting, but that due to the emotions he was experiencing (anger, fear, and upset), there was no question about why he fired the shot.

■ Although the record is replete with evidence of appellant's rage and anger, § 19.04 specifically requires that before "sudden passion" will be found, it must be provoked by the person killed or by someone acting with the person killed. In the case at bar, there is no evidence that Holly Abel, or anyone acting with or for her, acted in any way to provoke appellant. Appellant even went so far as to testify *that he neither knew nor saw her on the night of the offense.*

■ We conclude that the evidence presented at trial was insufficient to satisfy the statutory definition of "sudden passion." Fear or former provocation, standing alone, is not sufficient to raise the issue. Only such fear, if provoked by the person killed or by someone acting with that person, as would produce a degree of terror that would overcome the rational functioning of the mind could meet the statutory requirements. *Daniels v. State,* 645 S.W.2d 459 (Tex.Crim.App.1983). Even if a connection between Holly Abel and appellant were shown to have existed, how the appellant could have been so terrorized, and yet have been able to confront and threaten others with a wrench and with a gun, appears to be logically incompatible. As a result, the issue of "sudden passion" was not raised at trial, and its absence did not become an element of murder, implied or otherwise. We hold that the State, having no duty to prove the absence of "sudden passion," successfully carried its burden of proof.

Appellant's first four points of error are overruled.

Appellant avers in his fifth, sixth, seventh, and eighth points of error that the charge on guilt or innocence was fundamentally defective because it failed to include a jury instruction on the lesser included offense of voluntary manslaughter.

■ As previously established, there must be some evidence of sudden passion before voluntary manslaughter can be considered as a lesser included offense of murder. *Bradley,* 688 S.W.2d at 851.

■ Because we have determined that the issue of sudden passion was not raised at trial, appellant has not shown that the omission from the charge was erroneous. We conclude that appellant was not entitled to an instruction on voluntary manslaughter, and the trial court correctly withheld such an instruction.

Appellant's fifth, sixth, seventh, and eighth points of error are overruled.

Appellant avers in his ninth and tenth points of error that the trial court committed reversible error during the punishment phase of the trial by submitting instructions to the jury on the parole law and on the accumulation of good conduct time.

Appellant did not object to the court's charge at the time it was submitted to the jury. For the first time on appeal, he complains that the charge on parole law and good conduct time violated his right to fundamental fairness, that it was violative of the "separation of powers" between the legislative and executive branches of government, and that its language was confusing to the jury.

Under *Rose v. State,* 752 S.W.2d 529, 552 (Tex.Crim.App.1988)(op. on reh'g), failure to object to the court's charge on parole law does not result in waiver of the point of error and the issue is therefore properly before us for review on appeal.

The trial court's charge to the jury on parole law and accumulation of good conduct time tracked the statutory language of Tex.Code Crim.P.Ann. art. 37.07, § 4(a) (Vernon Supp.1988).

In *Rose v. State,* the Texas Court of Criminal Appeals held that Tex.Code Crim. P.Ann. art. 37.07, § 4(a) (Vernon Supp. 1988), requiring the trial court to instruct the jury on the Texas parole laws, was unconstitutional. 752 S.W.2d at 553. The *Rose* court further establishes that the harm analysis of Tex.R.App.P. 81(b)(2) is applicable to the type of parole charge error objected to in the case at bar. *Id.*

> Rule 81(b)(2) reads in pertinent part that [i]f the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines *beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.*

(Emphasis added.) *See Urbano v. State,* No. 01–87–00674–CR, slip op. at 9 (Tex. App.—Houston [1st Dist.], August 25, 1988, n.p.h.) (not yet reported); *Taylor v. State,* 755 S.W.2d 548, 550 (Tex.App.—Houston [1st Dist.], pet. pending).

■ The appellate record must demonstrate "beyond a reasonable doubt" that an unconstitutional parole instruction made "no contribution" to the jury's determination of punishment if the decision is to be affirmed.

Applying the requisite harm analysis of rule 81(b)(2) to the facts of the case at bar, we note that after reading the statutory language of article 37.07, § 4(a), to the jury, the trial judge instructed the jury further:

> You are not to discuss among yourselves how long the accused would be required to serve the sentence you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas, and must not be considered by you.

Thus, the trial judge's curative instruction reemphasized the final paragraph of the statutory instruction itself, that had previously been submitted to the jury which reads:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. *You are not to consider the manner in which the parole law may be applied to this particular defendant.*

Tex.Code Crim.P.Ann. art. 37.07, § 4(a) (Vernon Supp.1988) (emphasis added).

■ It is generally presumed, although such presumption is rebuttable, that a jury follows the instructions given by the trial judge, in the matter presented. *Rose,* 752 S.W.2d at 554. In the case at bar, in addition to the statutory instruction not to use information concerning parole in assessing the appellant's punishment, the trial judge also clearly informed the jury that parole matters were not to be considered by them.

A review of the record reflects that appellant was 22 years old at the time of his trial. No prior felony convictions were alleged against him in the indictment for enhancement or were proven during the punishment phase of his trial. Appellant testified that he did not intend to kill the deceased and that he and she were not acquainted, being in fact strangers to each other.

In the State's argument, the prosecutor vigorously entreated the jury to assess a life sentence against appellant, saying:

Now, if you read the charge, you will read that normally, a person has to serve a third of the time before they are eligible for parole. They are eligible for parole under any circumstances after twenty years or a third of the sentence, whichever is less. There is no such thing as spending life in prison, as [the defense] suggested during one of his questions. Also, anything over sixty years is meaningless. It's just air. If this crime offends you the way it ought to, give him life.

. . . .

I would submit to you that [the defense] has misinterpreted my statement. I never said that life was meaningless. What I did say is that, unfortunately, under our law, there is no such thing as life. More than sixty years, that is insanity. No matter what happens, the charge says the Defendant will become eligible for parole after twenty years or one-third of the sentence, whichever is less. So the Defendant is twenty-one. Assume you give him life. He'll be forty-two when he becomes eligible for parole. It's not to say that he'll be paroled on that day. We don't know when he would be. Someday, he will get out.

. . . .

Don't make a mistake. Please give him life. If you want to compromise, give him fifty to sixty years.

Despite the State's plea for a life sentence or a compromise of at least 50 to 60 years, the jury, instead, saw fit to assess a lesser sentence of 40 years.

Although 40 years is not life, or even 50 or 60 years, it is a significant punishment, and one which is not within the lesser range of punishment for the offense of murder. Tex.Penal Code § 12.32 (Vernon Supp.1988). Considering the record as a whole, despite the trial court's curative instruction, we are unable to determine *beyond a reasonable doubt* that the parole instruction, reinforced as it was by the argument of the prosecutor, did

not contribute to the punishment the jury assessed against the appellant.

Accordingly, appellant's ninth and tenth points of error are sustained.

The judgment of the trial court is affirmed as to guilt/innocence and appellant's motion for rehearing as to guilt/innocence is overruled. Appellant's motion for rehearing as to punishment is sustained, and the judgment of the trial court as to punishment is reversed and the cause is remanded for a new trial to determine punishment.

WARREN, J., dissents.

WARREN, Justice, dissenting.

I respectfully dissent. Appellant's conduct leading to the firing of the pistol and the death of complainant, was inane and apparently unacceptable to the jury. It was within the jury's province to assess punishment, within the range provided by law, and it did. I do not believe that the complained of charge or argument affected the jury's punishment; the defendant's outrageous conduct did. I would affirm.