**Virginia Ann SHORTEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–86–149–CR.

Court of Appeals of Texas,
Beaumont.

Jan. 12, 1989.

Howard R. Dixon, Jr., Robert C. Bennett, Houston, for appellant.

R.F. "Bo" Horka, Kountze, for appellee.

## OPINION ON REMAND

BROOKSHIRE, Justice.

Appellant was convicted by a jury of the offense of murder. The jury assessed punishment at 15 years confinement in the Texas Department of Corrections. Appellant perfected appeal and this Court affirmed the judgment of the trial court. *Shorten v. State,* 751 S.W.2d 262 (Tex.App. —Beaumont 1988), *vacated and remanded,* 758 S.W.2d 600 (Tex.Crim.App.1988).

In that opinion the majority of this Court found that since Appellant had not objected to the parole and good time credit portion of the trial court's charge on the same grounds she urged on appeal for reversal, no ground of error was preserved. The majority held that the proper standards for reviewing the point of error concerning constitutionality of the court's charge to the jury were those set out in *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985). Upon finding no egregious harm resulted from the giving of the parole law instruction mandated by *TEX.CODE CRIM. PROC.ANN. art. 37.07(4)* (Vernon Supp. 1988), we overruled Appellant's point of error concerning this instruction. Subsequently, the Court of Criminal Appeals held that the parole and good time credit instruction mandated by *TEX.CODE CRIM. PROC.ANN. art. 37.07(4)* was unconstitutional. *Rose v. State,* 752 S.W.2d 529 (Tex. Crim.App.1988) (opinion on rehearing). Furthermore, the Court of Criminal Appeals held that the proper standard for analyzing the harmfulness of such error is that codified in *TEX.R.APP.P. 81(b)(2). Rose II,* at 554. Upon Appellant's petition for discretionary review, the Court of Criminal Appeals remanded the cause to this Court so that we may determine whether the error in giving the unconstitutional instruction to the jury was harmless error under *Rule 81(b)(2), Shorten v. State,* 758 S.W.2d 600, 601 (Tex.Crim.App.1988).

*Rule 81(b)(2)* reads as follows:

"If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

Applying the harm analysis of *Rule 81(b)(2)* to the facts of this case, Appellant was convicted of the murder of her ex-husband. The jury was charged on the issue of self-defense and the lesser included offenses of voluntary manslaughter and criminally negligent homicide. The jury rejected Appellant's claim that she shot the victim in self-defense. We are unable to know what process the jury used in assessing punishment; however, the record includes factors and facts showing that the error was harmless.

In addition to the statutory instruction not to use information concerning parole in assessing Appellant's punishment, the trial judge also gave the jury the additional following instruction:

"During your deliberations you are not to consider or discuss the Indeterminate Sentence Law or possible actions of the Board of Pardons and Paroles on how long this Defendant will be required to serve the punishment you assess."

The Court of Criminal Appeals has held that a similar instruction was a significant factor indicating that such error in the charge on punishment was harmless. *Rose II*, at 554.

Furthermore, the facts of this case militate in favor of, if anything, a harsher sentence than was actually assessed. The evidence showed that Appellant shot Billy Shorten when he was not armed, and while he was quite a number of yards away from her. While Appellant claimed the victim was approaching her in a threatening manner, as if he were going to choke her, and that he was very near to her when the deadly shot was fired, the physical evidence at the scene was quite inconsistent with Appellant's version of the facts. And the jury rejected Appellant's narrative. It is also undisputed that, within a week after the killing, Appellant signed a claim for benefits under insurance policies on the life of her ex-husband. The jury could have sentenced Appellant to 99 years or life in prison, and imposed a fine of $10,000.00. Instead, the jury assessed Appellant's punishment at 15 years confinement, far less than the maximum sentence possible for the offense of murder.

The dissent cites with approval *Garay v. State*, 755 S.W.2d 956 (Tex.App.—San Antonio 1988, no pet.), and *Olivarez v. State*, 756 S.W.2d 113 (Tex.App.—San Antonio 1988, no pet.). *Garay, supra*, at 957, specifically condemns "the negating 'weasel words'." The negating instruction in *TEX. CODE CRIM.PROC.ANN. art. 37.07(4)* (Vernon Supp.1988) is derisively and derogatorily referred to as "weasel words" in *Garay, supra*. We disagree that these are "weasel words."

In *Olivarez*, at page 115, the Court wrote:

"The curative instruction to totally disregard parole in *Rose II* was *the prime reason for the Court's affirmance....*" (Emphasis added)

*Olivarez's* opinion's reasoning is not sound because, in a case where the accused might have an unappealing appearance or even a repulsive appearance or personality, it is certainly likely that such an accused could receive an extremely high term of years as punishment. Yet if the non-statutory curative instruction to totally disregard parole was given, then *Olivarez, supra*, reasonably stands for the proposition that an affirmance would result. Further, in *Olivarez, supra*, the Court wrote, at page 115:

"The heinous facts of *Rose* and Rose's criminal record buttressed the presumption that the jury followed the curative instruction to totally disregard the erroneously given statutory instruction, since the facts and the criminal record militated in favor of a harsh sentence and contributed to the jury's assessment of punishment. *See Rose II* at 532, 533 [SIC]. Based on the presumption that the jury totally disregarded parole, as supported by the facts and the criminal record, the Court in *Rose II* was able to determine

beyond a reasonable doubt that the erroneous statutory instruction that was given made no contribution to the punishment. The Court of Criminal Appeals did not reason that because the facts and criminal record justified or supported a life sentence, the erroneously given instruction did not contribute to the punishment. Such reasoning would incorrectly apply Rule 81(b)(2). 'The evil to be avoided is the consideration by the jury of parole in assessing punishment.' *Rose I* [*Rose v. State,* 752 S.W.2d 529] at 535 [ (Tex.Cr.App.1987) ] (quoting *Clark v. State,* 643 S.W.2d 723, 725 (Tex.Crim. App.1982))."

Such narrow reasoning by giving paramount and conclusive results to the "curative instruction" would disregard the nature of the facts of the case, the accused's criminal record and other important factors. Furthermore, in *Rose I* at 551–552, Judge McCormick pointed out, in his dissent, that Judge Clinton's majority opinion stands in contradiction to statements he made in *Keady v. State,* 687 S.W.2d 757 (Tex.Crim.App.1985). There, Judge Clinton suggested a pattern jury charge to explain to jurors why parole should not be considered in determining a sentence. *Keady,* at 762. However, as Judge McCormick points out, Judge Clinton and the majority in *Rose I, supra,* finds highly similar language in the final two paragraphs of *TEX. CODE CRIM.PROC.ANN. art. 37.07(4)(a), (b), (c)* (Vernon Supp.1988), to be offensive and, therefore, an insufficient curative instruction to demonstrate no harm beyond a reasonable doubt. *Rose I,* at 552.

We must recognize the fact that modern juries are intelligent and sophisticated to the degree that they can accurately and conscientiously follow the plain instructions of the trial judge. Furthermore, the San Antonio Court of Appeals' position in *Garay, supra,* that the "curative" "weasel words" instruction as given in *Rose II* is the determining factor in applying *TEX.R. APP.P. 81(b)(2)* harm analysis would seem to require an affirmance in every case where the "curative instruction" was given regardless of whether the other factors identified and stressed in *Rose I,* at page

537 and *Rose II,* at 554, were present or not. We think, therefore, that the presumption that the jury followed slavishly the "curative instruction" could be effectively rebutted or devalued if the State extensively and vehemently argued the parole law instruction to the jury.

But, in any event, we would very respectfully, yet with zeal, urge the Court of Criminal Appeals to reconsider the remand of this issue to the Courts of Appeals in a case like this one involving Virginia Ann Shorten. The record before us demonstrates that the indictment charges that Virginia Ann Shorten, on or about January 19, 1985, in Hardin County, Texas, caused the death of Robert William Shorten by shooting him with a gun. Almost four years will have elapsed since this fatal shooting.

It is extremely important to note that the presiding judge, the Honorable Britton Plunk, the District Judge of Hardin County, did actually give an additional curative instruction. This curative instruction was in addition to the instructions given in the relevant paragraphs of *TEX.CODE CRIM. PROC.ANN. art. 37.07(4)* (Vernon Supp. 1988). Judge Plunk forbade the jury, at the punishment phase of the trial, to even consider or discuss the indeterminate sentence law; nor could the jury even consider or discuss any possible actions of the Board of Pardons and Paroles; nor could they even consider or discuss how long this accused would be required to serve any punishment which the jury might assess. Of course, the trial judge also specifically charged the jury thus:

> "However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant."

Hence, under *Rose II, supra,* this Appellant would not be entitled to a remand for a retrial of the punishment phase of this murder proceeding. Toward the end of the proceeding the jury was polled and each individual juror, by name, was asked if the ·assessment of Mrs. Shorten's punishment

at confinement in the Texas Department of Corrections for fifteen years was the individual verdict of each juror. Each of the twelve answered: "Yes." Mrs. Shorten was formally sentenced to fifteen years confinement. The court advised her of her right to appeal and other rights. The Appellant's lawyer requested the district court to set an appeal bond and to carry the bond over that Mrs. Shorten was then presently on. The court carried over the $25,000 bond that Mrs. Shorten was on prior to and during the trial. The court ordered that that would be the appeal bond. We point this out to show to the Court of Criminal Appeals that this lady has not been incarcerated; she has been apparently on bond all the time; but, nevertheless, her life has been in a state of suspension and grave uncertainty for a period of about four years. Mrs. Shorten has been living under the sword of damocles.

Hence, we would urge the Court of Criminal Appeals in the future, in a case such as this, to expeditiously decide on this parole instruction issue itself rather than remand the case to a Court of Appeals for further consideration. Remand will delay even further the ultimate resolution of Mrs. Shorten's case.

The additional curative instruction given by Judge Plunk contained words very similar, if not virtually identical, in meaning to the additional instruction in *Rose II*, at page 554. In *Rose II, supra*, the jury was instructed not to discuss how long the defendant would be required to serve any sentence imposed. Judge Plunk used stronger language, saying that the jury was not to consider or discuss how long the defendant will be required to serve the punishment assessed. Judge Plunk forbade the jury to even consider any possible actions of the Board of Pardons and Paroles. This instruction comports and complies fully with the additional instruction in *Rose II, supra*. Therefore, under Judge Britton Plunk's total charge, we decline to remand the case. We deny that Judge Plunk used "weasel words."

After carefully reviewing the record of this case, in light of *Rose II, supra*, and *TEX.R.APP.P. 81(b)(2)*, we find that, beyond a reasonable doubt, the error in giving the jury the parole law instruction made no contribution to the punishment assessed by the jury. There must exist a reasonable doubt; any conceivable doubt is not the test.

We reaffirm the judgment and the sentence in this case.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority, while espousing a harm analysis under Rule 81(b)(2) is, in my opinion, utilizing the *Almanza* harm analysis. There is a difference between the so-called "harmless error" standard applied by the majority and the requirement that this court find beyond a reasonable doubt that the error made *no* contribution to the punishment. The majority, in fact, finds that "the facts of this case militate in favor of, if anything, a harsher sentence than was actually assessed," indicating appellant would be required to show how she was harmed. The burden is actually upon the state to show *no* harm.

The reported cases are obviously divided on how *TEX.R.APP.P. 81(b)(2)* should be applied under *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988) (on rehearing). In *Salas v. State*, 756 S.W.2d 832 (Tex.App.—Corpus Christi 1988, no pet.) a murder conviction was reversed where a sixteen-year-old with no prior convictions received a twenty-five-year sentence. *Garay v. State*, 755 S.W.2d 956 (Tex.App.—San Antonio 1988, no pet.) was a reversal where an aggravated robber with a prior felony received seventy years. The court noted the charge did not include the additional instructions that how long the defendant would be required to serve was not the jury's concern, but referred to this instruction as the "curative" instruction. *Id.* at 957. *Olivarez v. State*, 756 S.W.2d 113 (Tex.App.—San Antonio 1988, no pet.) was a reversal where an aggravated robber found to be a habitual offender received forty-five years. This case criticizes *Baker v. State*, 752 S.W.2d 237 (Tex.App.—Fort

Worth 1988, pet. ref'd) and *Lancaster v. State*, 754 S.W.2d 493 (Tex.App.—Dallas 1988, no pet.) in using the analysis that there was ample evidence to support the jury's finding. *Howell v. State*, 757 S.W.2d 513 (Tex.App.—Houston [1st Dist.] 1988, no pet.) was a reversal of a murder conviction where the defendant, who had no prior convictions, received 40 years. The jury had been given the "curative" instruction, but the state extensively argued parole law. *Rische v. State*, 757 S.W.2d 518 (Tex. App.—Houston [1st Dist.] 1988, no pet.) reversed a twelve-year sentence for voluntary manslaughter.

*Rodriquez v. State*, 757 S.W.2d 420 (Tex. App.—Dallas 1988, no pet.) affirmed a life sentence for murder where the defendant confessed to the crime and the state proved three prior convictions. *Webber v. State*, 757 S.W.2d 51 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd) affirmed a sentence of forty-nine years for aggravated robbery. The "curative" instruction was present, and the jury found two prior felony convictions. *Zwack v. State*, 757 S.W.2d 66 (Tex. App.—Houston [14th Dist.] 1988, no pet.) affirmed a forty-five-year sentence for attempted capital murder. In this case, the "curative" instruction was given and several jurors testified in a motion for new trial hearing that the parole law instruction did not cause a longer sentence. *Compare Austin v. State*, 748 S.W.2d 546 (Tex.App. —Beaumont 1988, pet. ref'd) which reversed, under an *Almanza* "egregious" harm analysis, a twenty-year conviction for murder where a juror had also stated the parole law charge was considered in light of the particular defendant. *Pope v. State*, 756 S.W.2d 401 (Tex.App.—Dallas 1988, no pet.) affirmed a forty-five-year aggravated sexual assault sentence where the "curative" instruction had been given and the court found the facts to be heinous. In *Evans v. State*, 760 S.W.2d 760 (Tex.App.— Beaumont 1988) this court unanimously affirmed a ninety-nine-year sentence for aggravated sexual assault because of the "curative" instruction, two prior felony convictions and the "grizzly facts."

Once a fact finder had rejected a defendant's self-defense theory and reached a murder conviction, the crime, by common sense, is a heinous crime. However, in the context of comparing murder scenarios, this was not particularly heinous. While it is obvious the jury did not want appellant to receive probation, she nevertheless received three times the minimum. Thus, I cannot say, beyond a reasonable doubt, that the parole law charge did *not* contribute to the punishment. Therefore, I would reverse and remand for a new trial on punishment.