**Anthony Joseph MILLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00089–CR.**

Court of Appeals of Texas, Dallas.

May 16, 1989.

Discretionary Review Refused Aug. 30, 1989.

Dan P. Garrigan, Lawrence B. Mitchell, Dallas, for appellant.

Leslie McFarlane, Dallas, for appellee.

Before ENOCH [1], C.J., and McCLUNG and KINKEADE, JJ.

ON REMAND FROM THE COURT OF CRIMINAL APPEALS

KINKEADE, Justice.

Anthony Joseph Miller was convicted of possession of a controlled substance. Punishment, enhanced in the indictment by two previous convictions, was assessed by the jury at forty years' confinement. On appeal to this Court, Miller contended that the trial court erred in submitting good time and parole instructions to the jury on the grounds that the charge was predicated upon an unconstitutional statute. We rejected this challenge to the constitutionality

---

1. Chief Justice Enoch did not participate in this decision.

of article 37.07, section 4 of the Texas Code of Criminal Procedure. *See Miller v. State,* 723 S.W.2d 789 (Tex.App.—Dallas 1987).

The Court of Criminal Appeals granted his petition for discretionary review and agreed with his contention that the statute in question is unconstitutional. *See Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1988). That court remanded the cause to this Court to conduct a harmless error analysis under rule 81(b)(2) of the Texas Rules of Appellate Procedure. *Id.* at 554; *Haynie v. State,* 751 S.W.2d 878, 879 (Tex.Crim. App.1988).

Rule 81(b)(2) of the Texas Rules of Appellate Procedure provides that a general harm analysis be applied by appellate courts in criminal cases and states as follows:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or the punishment.

TEX.R.APP.P. 81(b)(2). This standard requires a review of the entire record.

During the trial, the evidence presented showed that Miller was driving a car and was stopped by a police officer for speeding. When Miller got out of his car, the officer asked him for his driver's license. As Miller was producing his license, the officer noticed the top of a syringe sticking out of Miller's pocket and seized the syringe. As the officer seized the syringe, Miller stated, "Oh, there's nothing in it." The officer noticed a few drops of clear liquid in the syringe. At trial, the State's chemist testified that the syringe held two or three drops of a visible clear liquid residue containing, among other things, diphenhydramine, a cutting agent for heroin, and heroin in the amount of 8 one-millionths of a gram. Miller was found guilty as charged.

During the punishment hearing, Miller pled true to paragraphs two and three of the indictment which were enhancement paragraphs. Paragraph two stated that Miller had been convicted of the felony offense of theft of property of the value of at least $20,000. Paragraph three stated that Miller had been convicted of the felony offense of the delivery of a controlled substance. In addition, the State introduced a penitentiary record which indicated that Miller had been convicted for a third felony offense of unlawful delivery of a controlled substance and for a fourth felony offense of theft of property of the value of $200 or more but less than $10,000.

As required by article 37.07, the trial court submitted the following instruction to the jury:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(b) (Vernon Supp.1988).

The State asked the jury to assess a life sentence and supported its request by referring to the effects of parole and good time. The prosecutor argued:

> It should be no surprise to you, when I get through talking, why I'm going to ask you to give the defendant a life sentence, because under the parole laws he could be eligible for parole when his good time plus his actual time equals a third of his sentence or twenty years, whichever is less. So, this life sentence doesn't mean a life sentence; at best, it means a twenty-year sentence.

The defense objected to the argument as a being outside the record, inaccurate, a misstatement, and "just flat wrong." The trial judge sustained the objection and the jury was ordered to disregard. The State's prosecutor went on to argue:

> Well, when actual time served plus good time equals one third, or twenty years, whichever is less. Okay? Twenty years. That's the cutoff point. A third of that. You figure it out.

Apply the law that you see in this charge, and you can see how ridiculous it is when you say a life sentence. It doesn't mean that at all. And that's the reason why I'm asking for a life sentence, because this man has the record that earns it and because he might be released long before his life is through.

Despite the State's plea for a life sentence, the jury, instead, saw fit to assess a lesser sentence of forty years. However, the State's argument was clearly inviting the jury to apply the parole to this defendant, Miller. *Howell v. State*, 757 S.W.2d 513, 518 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); *Morris v. State*, 755 S.W.2d 505, 511 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

Considering the record as a whole, we are unable to determine beyond a reasonable doubt that the parole instruction, reinforced as it was by the argument of the prosecutor, did not contribute to the punishment the jury assessed against Miller. TEX.R.APP. 81(b)(2). The judgment of the trial court is reversed and the cause is remanded for a new trial.