John Pershing JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–86–119 CR.

Court of Appeals of Texas,
Beaumont.

June 7, 1989.

Randy McDonald, Houston, for appellant.

Steve Greene, Liberty, for State.

## OPINION ON REMAND

BROOKSHIRE, Justice.

The lengthy and burdensome record in the above case is revisited and reviewed. The Court of Criminal Appeals in an unpublished Per Curiam opinion on the Appellant's Petition for Discretionary Review recited in substance that the Appellant had argued that the trial court fell into error in instructing the jury on the law concerning good time and parole, inasmuch as that charge was predicated upon an unconstitutional statute. Our Court of Appeals rejected this challenge of unconstitutionality of *TEX.CODE CRIM.PROC.ANN. art. 37.-07, sec. 4* (Vernon Supp.1989). See *Johnson v. State*, 737 S.W.2d 923 (Tex.App.—Beaumont 1987, pet. granted).

Thereafter the Court of Criminal Appeals held in *Rose v. State*, 752 S.W.2d 529 (Tex. Crim.App.1987) that Article 37.07, sec. 4, was unconstitutional. That Court decided it was then necessary for the Ninth Court of Appeals to conduct a harmless error analysis under the guidelines of *TEX.R. APP.P. 81(b)(2)*. Whereupon, the judgment of the Court of Appeals was ordered vacated and the cause remanded. We glean from the opinion as well as the command of the Court of Criminal Appeals—that is to say, that under the opinion and the order of the Court of Criminal Appeals—the only point of error addressed by the high court was the good time and parole law instruction.

Apparently no other point of error or no other issue in the case was addressed or even considered by the high court. Whether correctly or incorrectly, we had made a conscientious and, hopefully, a thorough review of the record in our published opinion. *Johnson, supra.* In that opinion we had dealt with strident, determined points of error urged by the Appellant. These points of error were ably set forth and professionally briefed, urged and argued with appropriate references to the statement of facts along with numerous authorities in Appellant's brief of 41 pages.

Not counting the transcript, the statement of facts consists of eight volumes totalling approximately 1027 pages. We had thought in our original opinion that the points of error were challenging and meaty, if not knotty and difficult, of resolution. But apparently the Court of Criminal Appeals has not addressed any of them except to order a remand under *Rose, supra.* We now attempt to assiduously follow the command. We have reviewed the record and the briefs and our opinion of approximately 25 pages, reduced when printed to 10 pages in the Southwestern Reporter.

We are again aware that the Appellant's brief conceded that on October 18, 1984, the Appellant, John Pershing Johnson, flew into this country a planeload of cocaine. The cocaine was approximately 700 pounds

in weight and the said cocaine was 93 to 98 percent pure cocaine. On October 1, 1984, the Appellant had flown into this country approximately 1,400 pounds of marihuana. Two of the attempted defenses of the Appellant were entrapment and mistake of fact. Upon review, it is clear that the jury rejected these defenses as well as many other defenses. The Appellant also urged the defense of an early immunity agreement. However, the State's witnesses vehemently denied the Appellant was working for the government or was working under any type of immunity agreement on the occasion in question.

The Appellant raised a point of error that the evidence was insufficient to prove that the Appellant delivered over 400 grams of almost pure cocaine by constructively transferring the same. We note that there was evidence of strong probative force that the Appellant flew a planeload of cocaine into a rural airport near Cleveland, Texas, in Liberty County. He exited the plane immediately but he left the plane and its cocaine cargo to an undetected, undercover agent for the Drug Enforcement Administration to do the offloading of the "coke". The evidence and record in the case certainly raised a jury issue that the Appellant really perceived and actually thought the undercover agent to be a worker in the actual employ of a very large drug dealer. This large drug dealer was to pay the flight money or fee for flying in the cocaine in the sum of $150,000 to Appellant. Many more aggravating facts could be narrated here; many facts were heinous.

Our Ninth Court has previously written that our intermediate appellate court should consider three important factors in determining whether the parole law instruction was harmless. Curative instructions were one of the three factors. The prior criminal record and activities of the accused were the second. Whether the facts of the principal case under review were aggravated and heinous were a third factor. We have diligently endeavored to follow *Rose II*, being *Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App.1988) (opinion on rehearing.)

In reviewing John Pershing Johnson's case, we find in the charge of the court at the punishment stage that the court recited to the jury that the jury had found the accused guilty of delivery of a controlled substance, namely, cocaine of at least 400 grams or more. The court further instructed the jury in its charge that a person adjudged guilty of this offense shall be punished by confinement in the TDC for life or for a term of not more than 99 years or less than 15 years and in addition to the imprisonment, a fine may be imposed not to exceed $250,000.00. We find significantly in the same charge that the court gave a curative instruction. The jury was also carefully and strictly charged that their verdict should be determined only by a full, fair and free exercise of the opinion of the individual jurors *under the evidence before the jury.*

The jury was forcefully warned that their failure to comply with these instructions could result in a mistrial and that violations of the court's instructions could result in the jurors being held in contempt of court. One of the instructions was that the jury was not to consider the extent to which good time may be awarded or forfeited by this particular accused. Another instruction was that the jury was not to consider the manner in which the parole law might be applied to this Appellant. In view of the entirety of the charge at the punishment stage, we decide that an intelligent, modern jury will follow the court's charge. Appellate courts are to presume that the jury will follow strictly the instructions given by the trial judge. This is especially meaningful when that jury is warned that their violations of the instructions could result in the individual members of the jury being held in contempt of court. We also recognize that modern juries are intelligent, diligent, conscientious, and able to accurately and assiduously follow the plain instructions of the trial judge *as well as the plain and solemn warnings of the trial judge.*

We also find that the prior activities and criminal endeavors of the Appellant are strongly supportive of the jury's verdict. Additionally, we find that the seriousness

of the primary offense clearly demonstrates that the giving of the parole law instruction was harmless beyond a reasonable doubt. The large amount of the cocaine involved as well as facts surrounding the flight of that same large cargo of nearly pure cocaine into the Liberty County airport clearly and glaringly supports the verdict of the jury at the punishment stage. The jury declined to assess the punishment at life confinement, but instead awarded only a term of 20 years and a fine of $20,000.00. The fine could have been as large as $250,000.00.

In summary, under this record we not only have the giving of a strong and clear curative instruction by the trial court, but the said curative instruction was coupled with a strong, compelling and solemn warning to the jury to follow all the instructions in the court's charge at the punishment stage on pain of being held in contempt of court. Secondly, we notice that the Appellant had flown in a large shipment of marihuana prior to the cocaine delivery for which he had been previously paid a large sum of money. Hence, we determine beyond a reasonable doubt that the error in the charge made no contribution to the punishment in this case. *Evans v. State,* 760 S.W.2d 760 (Tex.App.—Beaumont 1988, pet. ref'd).

The three-factor test under *Rose II, supra,* we think, is not to be considered by us as the exclusive, all-encompassing test. We opine that other compelling factors may be considered by us. This record reflects that the shipment of the cocaine in question amounted to about 678 pounds of 93 to 98 percent pure cocaine, having a street value of approximately 150 million dollars ($150,000,000.00). Hence, we have not overreached the *Rose* factors, rather, the dissenting attitudinarian attempts to overreach and overthrow the jury's verdict. Moreover, the dissent cites *Shorten v. State,* 764 S.W.2d 358, 361 (Tex.App.— Beaumont 1988, pet. ref'd). Since the petition for discretionary review has been refused, we must question the precedential value of that dissenting opinion.

We have recently held that the three-factor test in *Rose II* is not absolute, excluding other compelling, cogent factors. *Dennis v. State,* 772 S.W.2d 525 (Tex.App. —Beaumont, 1989, n.w.h.).

The dissent cites opinions from two other Courts of Appeals. We respect these Courts and accord the three opinions cited considerable weight. We are not bound by them.

The judgment and sentence below are, for the second time, affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. Under a *TEX.R. APP.P. 81(b)(2)* analysis, I am unable to determine, beyond a reasonable doubt, that the use of the parole instruction made no contribution to the punishment. Therefore, I would reverse for a new punishment hearing.

The majority enunciates a three-factor test under *Rose v. State,* 752 S.W.2d 529, 552 (Tex.Crim.App.1988) (opinion on rehearing), as (1) curative instructions, (2) prior criminal record of the accused, and (3) aggravated and/or heinous facts. In an attempt to comply with this three-factor test, the majority finds there was a strong and clear curative instruction given to the jury. The court did not give the curative instruction in *Rose* which was the traditional instruction used prior to the statutory instruction. Therefore, factor one is not present.

Factor two is also distinguishable from *Rose.* In *Rose,* at the punishment stage, the jury had evidence of five prior convictions. In the instant case, no evidence was presented at the punishment stage. The majority relies upon an extraneous offense admitted into evidence during the guilt/innocence stage, with an instruction that it was to be considered only in determining intent and knowledge, as being "prior activities and criminal endeavors . . . strongly supportive of the jury's verdict." Here again, the majority overreaches in their attempt to satisfy the *Rose* factors.

The majority equates the "seriousness of the primary offense" to aggravated and/or heinous facts. I agree that the importation of cocaine is a serious offense. The legislature obviously felt the same way because they (1) criminalized the activity and (2) increased the punishment when the amount exceeded four hundred grams. The majority, however, does not point to any aggravated or heinous conduct other than the offense itself. This is not enough to satisfy the third *Rose* factor. *See Shorten v. State,* 764 S.W.2d 358, 361 (Tex.App.—Beaumont 1989, pet. ref'd) (dissenting opinion).

A final, and perhaps more important, consideration is the fact that the parole instruction was argued by the state. Several cases have been reversed because of this. *See Howell v. State,* 757 S.W.2d 513 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); *Morris v. State,* 755 S.W.2d 505 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). In *Woods v. State,* 766 S.W.2d 328 (Tex.App.—Houston [14th Dist.] 1989, no pet.), the court, while observing that the facts of the offense justified the sentence, reversed in light of the prosecutor's argument of the parole law instruction. This argument, coupled with the scarcity of the *Rose* factors, should result in a reversal; since it does not, I respectfully dissent.