

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. AP-76,378
---

### BRENT RAY BREWER, Appellant

### v.

### THE STATE OF TEXAS

---
### ON DIRECT APPEAL
### FROM CAUSE NO. 6997-A IN THE 47TH DISTRICT COURT
### RANDALL COUNTY
---

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, KEASLER, COCHRAN and ALCALA, JJ., joined. WOMACK, JOHNSON, and HERVEY, JJ., concurred.

In June of 1991, appellant was convicted of capital murder and sentenced to death.[1] We affirmed his conviction and sentence on direct appeal,[2] but his sentence was later vacated by a federal

---

[1] TEX. PENAL CODE §19.03(a); TEX. CODE CRIM. PROC. art. 37.071. Unless otherwise indicated, all future references to articles refer to the Code of Criminal Procedure.

[2] *Brewer v. State*, No. 71,307 (Tex. Crim. App. June 22, 1994) (not designated for publication).

district court.[3]  A new punishment hearing was held in 2009, and appellant was again sentenced to death.  Direct appeal to this Court is automatic.[4]  Appellant raises five issues.  Finding no reversible error, we affirm.

## I. BACKGROUND

On April 26, 1990, appellant and Kristie Nystrom asked Robert Laminack for a ride to the Salvation Army, and he agreed to take them.  During the drive, appellant began stabbing Laminack while demanding his wallet.  Laminack turned over his wallet, which contained $140, and appellant and Nystrom fled from the scene.  Laminack died from his injuries.

## II. ANALYSIS

### A. Jurisdiction

In his first issue, appellant claims that the trial court lacked jurisdiction because the trial judge granted his motion to quash the indictment.  At oral argument, appellant's counsel conceded this issue.  He explained that, at a hearing held after the brief was filed,[5] it became clear that the trial court had orally denied the motion and that the written order purporting to grant the motion was a clerical error.  Issue one is overruled.

### B. Parole Eligibility

In issues two and three, appellant complains about matters related to parole eligibility.  We shall first detail the events relating to parole eligibility that transpired at trial.

---

[3]  *See Brewer v. Dretke*, 2004 U.S. Dist. LEXIS 14761 (N.D. Tex. Aug. 2, 2004); *Brewer v. Quarterman*, 550 U.S. 286 (2007); *Brewer v. Quarterman*, 512 F.3d 210 (5th Cir. Tex. 2007).

[4]  TEX. CODE CRIM. PROC. art. 37.0711, §3(j).

[5]  We had abated the appeal and remanded this case to the trial court to inquire in the matter.

## 1. *Background*

Appellant filed a motion to preclude the State from placing any information about the applicable parole law before the jury. He contended that such information was irrelevant and violated his rights under the due process and cruel and unusual punishment provisions of the United States Constitution. He claimed that a parole instruction could be submitted only if requested by the defense, and he claimed that even an instruction that told the jury not to consider parole would be impermissible.[6] The trial court granted this motion.

In a hearing outside the presence of the jury, defense counsel requested that Nystrom be admonished not to talk about her own eligibility for parole. The prosecutor responded, "Your Honor, the Court's ruling was in reference to Mr. Brewer's parole, not Ms. Nystrom's parole." Defense counsel objected that appellant would be prejudiced by any mention by Nystrom of eligibility for parole on her life sentence for the same capital murder because the jury would then know that appellant was also eligible for parole. The prosecutor responded that evidence regarding Nystrom's parole eligibility was relevant to show why she was testifying at appellant's new punishment hearing when she did not testify at his original trial. The prosecutor also argued that it was "total speculation" whether the jury would equate Nystrom's parole eligibility with appellant's. The trial

---

[6] With respect to the latter two claims, appellant's motion stated:

Any parole instruction requested by the State should be denied as statutorily improper as the Texas Code of Criminal Procedure allows only a defendant to request such an instruction. During Brewer's original sentencing trial, the judge correctly overruled a request by the State for the following instruction: "During your deliberations you will not consider or discuss any possible action of the Board of Pardons and Paroles or the Governor, nor how long a defendant would be required to serve on a sentence of life imprisonment."

judge asked if appellant's objection was based on Rule 403,[7] and defense replied, "Well, I maintain it's objectionable under the entire motion that we filed, but I think that's certainly a component of it." The trial judge then overruled the objection.

The State called Nystrom as a witness. The prosecutor questioned Nystrom about the fact that she had not testified at appellant's earlier trial. Nystrom affirmed that, at the time of appellant's first trial, she had been charged with capital murder but had not been tried yet. At that first trial, she had invoked her Fifth Amendment right not to testify. The prosecutor questioned Nystrom about parole in the following colloquy:

Q. What is the one thing we said that we would do if you agreed to testify?

A. That you would write a letter stating that I had cooperated to the parole board.

Q. Okay. And you have—you've been up for parole twice. Is that correct?

A. Yes, sir.

Q. And our agreement with you is, that if you testify, we will tell the parole board that you cooperated and testified, and that's all we are going to do.

A. That's it.

Q. We're not going to go testify for you at the parole board or encourage them to give you parole or anything else. Only that you did agree and you did cooperate and you did testify truthfully to our knowledge?

A. Yes, sir.

Q. Is the fact that we're willing to write such a letter to the parole board—is that the only reason you are willing to testify now?

A. No, sir.

During argument, the prosecutor briefly referred to Nystrom's parole eligibility in

---

[7] TEX. R. EVID. 403.

commenting on her credibility:

> [PROSECUTOR]: There's been a little bit of new evidence in this case that nobody ever heard before, Kristie Nystrom. And I think it helps a lot. I think it helps us know for sure there was a plan. The other jury apparently believed there was, but now we have even more evidence from Kristie Nystrom. Now, I realize she may have a motive to lie to you. I realize that. She's been up for parole twice. She's hoping—
>
> [DEFENSE COUNSEL]: I'm going to object at this point and renew my previous objection.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: She's been up for parole twice and she is hoping the parole board will hear this time that she did cooperate for the first time and testified. I understand that. But you saw her testimony. I—I truly believe part of it is she finally wants to try to do what is right by the Laminack family.

During deliberations, the jury sent out two notes (at the same time) inquiring about parole. In the first note, the jury asked, "Is a life sentence 'without chance of parole?'" In the second note, the jury asked, "Does a life sentence constitute life without parole? Is there a possibility of parole in the future?" After the trial judge asked for input from the parties, defense counsel moved for a mistrial on the basis that the jury was improperly considering parole. The trial judge denied the motion for mistrial and instructed the jury, "As to the questions you asked, please reread the charge, and that is all I can tell you."

## 2. *Evidence*

In issue two, appellant contends that the trial court abused its discretion in admitting evidence that Nystrom was eligible for parole.[8] In his ground and supporting argument, appellant never

---

[8] The exact wording of his issue is:

When the offense was committed, at sentencing a capital jury could not properly

(continued...)

explains exactly why the evidence in question is inadmissible. He argues that parole eligibility is irrelevant to the special issues, but he does not explain why the evidence that the State had agreed to tell the parole board of Nystrom's cooperation was irrelevant. Appellant also cites *Sneed*[9] regarding misstatements of parole law, though he never explains how the *Sneed* case relates to the issues at hand. And appellant devotes a large section of his argument to a harm analysis. But before error can be harmful, it must be error. Arguably, appellant has failed to adequately brief this issue.[10]

Nevertheless, we address the merits of appellant's complaint as best we understand it and determine that the trial court did not abuse its discretion in admitting the evidence. The evidence in question was relevant to the jury's evaluation of Nystrom's credibility as a witness. The fact that the State would write a letter to the parole board saying that she had cooperated had some tendency to show possible bias or interest on her part. In *Coleman v. State*, we said that "*any and every fact going or tending to show mental bias, interests, prejudice, or any other motive, or mental state, or status of the witness which, fairly considered and construed, might even remotely tend to affect his credibility should be admitted.*"[11] That statement is no longer unqualifiedly true, as it has been modified by the rules of evidence, but we see no rule of evidence that would exclude the evidence

---

(...continued)
consider parole eligibility. And here a life sentence would mean *immediate* parole eligibility. Was the admission of testimony of an accomplice's current parole eligibility under a capital life sentence, over objection, and in violation of a pretrial order, an abuse of discretion, and did more than a slight effect result since the jury notes reflected deliberation regarding appellant's parole eligibility?

[9] *Sneed v. State*, 670 S.W.2d 262 (Tex. Crim. App. 1984).

[10] *See* TEX. R. APP. P. 38.1(h).

[11] 545 S.W.2d 831, 834 (Tex. Crim. App. 1977) (brackets and changed capitalization omitted, emphasis in *Coleman*).

at issue here. If the evidence is seen as an attack on the credibility of the witness, the rules allow the

credibility of the witness to "be attacked by any party, including the party calling the witness."[12] Had

appellant, rather than the State, offered this evidence in an effort to show Nystrom's motive for

testifying, it clearly would have been admissible.[13] Furthermore, it is not uncommon for the State

to bring out on direct examination evidence that shows its own witnesses's motive to cooperate.[14]

Even if we construe appellant's complaint to embrace a Rule 403 claim, we conclude that

a violation of that rule has not been shown. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially
> outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
> the jury, or by considerations of undue delay, or needless presentation of cumulative
> evidence.[15]

The use of the word "may" in the rule was intended to confer substantial discretion on the trial

---

[12] TEX. R. EVID. 607.

[13] *Billodeau v. State*, 277 S.W.3d 34, 42-43 (Tex. Crim. App. 2009) ("The possible animus, motive, or ill will of a prosecution witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him.") (allegation that child witness was biased because defendant took away his remote-control cars); s*ee Smith v. State*, 779 S.W.2d 417, 430-31 (Tex. Crim. App. 1989) (alleged violation of discovery order in failing to timely disclose prosecutor's agreement to write a letter to parole board was not a basis for reversal because defendant was able to use this beneficial information in cross-examination of the witness); *contra, Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004) (defendant's offer of proof failed to establish a nexus between witness's testimony and witness's prison sentence because witness was ineligible for good time and had no idea about other potential favorable treatment).

[14] *See, e.g., De La Paz v. State*, 279 S.W.3d 336, 345 (Tex. Crim. App. 2009).

[15] TEX. R. EVID. 403.

court.[16] Moreover, showing prejudice is not enough to exclude evidence under the rule; the prejudice must be "unfair"[17] and it must *substantially* outweigh the probative value of the evidence.[18] Under the Rule 403 balancing inquiry, the following factors may be considered: (1) how compellingly the evidence serves to make a fact of consequence more or less probable, (2) the potential for the evidence to impress the jury in an irrational but nevertheless indelible way, (3) the time the proponent needs to develop the evidence, and (4) how much the proponent actually needs the evidence to prove a fact of consequence.[19]

With respect to the first factor, the evidence may not have been especially probative, but it was relevant to an assessment of the witness's credibility. Regarding the third factor, the State needed very little time to present the evidence. As for the fourth factor, there was another obvious explanation for why Nystrom would testify at appellant's second trial but not his first: Nystrom's own case had not been tried yet at the time of appellant's first trial. Nevertheless, without the information about the State's promise to tell the parole board of her cooperation, a factfinder's view of Nystrom's credibility would have been incomplete.

The most important question here is the second factor: Did the evidence have the potential to impress the jury in an irrational but indelible way? We conclude that it did not. Even assuming the jury understood from the evidence that appellant could be immediately eligible for parole, the

---

[16] *Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006).

[17] *Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010).

[18] *See id.* ("Rule 403 favors the admission of relevant evidence, and carries a presumption that relevant evidence will be more probative than prejudicial.").

[19] *Powell*, 189 S.W.3d at 287; *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991).

future-dangerousness issue calls upon the jury to assess whether the defendant would be dangerous "whether in or out of prison."[20]   Because a jury is already supposed to consider a defendant's dangerousness outside of prison, the information that the defendant may be out of prison soon, if given a life sentence, does not really change the calculus.  Moreover, because appellant was in fact eligible for parole at the time he was sentenced at the punishment retrial,[21] we are not faced with a situation in which the jurors might have mistakenly believed that the defendant would be eligible for parole sooner than he was.[22]

And, in considering whether evidence had the potential to impress the jury in an irrational way, we must consider whether that potential irrational impact could have been prevented or minimized by a limiting instruction.[23]  A limiting instruction to consider the evidence solely in connection with Nystrom's credibility and not to consider the question of parole with respect to appellant's sentence would have been sufficient to prevent the jury from considering the possibility of parole.[24]  Issue two is overruled.

---

[20]  *Estrada v. State*, 313 S.W.3d 274, 282-83 (Tex. Crim. App. 2010).  *See also Williams v. State*, 273 S.W.3d 200, 234-35 (Tex. Crim. App. 2008).

[21]  Under the law in effect at the time the offense was committed, a capital-murder defendant sentenced to life in prison would be eligible for parole after fifteen years.  TEX. CODE CRIM. PROC. art. 42.18, § 8(b).  By the time of his punishment retrial, appellant had already served that much time.

[22]  *Cf. Sneed*, *supra*; *Simmons v. South Carolina*, 512 U.S. 154 (1994).

[23]  *Henderson v. State*, 962 S.W.2d 544, 567-68 (Tex. Crim. App. 1997); *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996); *Montgomery*, 810 S.W.2d at 393.

[24]  *Hawkins v. State*, 135 S.W.3d 72, 84-85 (Tex. Crim. App. 2004); *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Brown v. State*, 769 S.W.2d 565, 567 (Tex. Crim. App. 1989).  *See also* TEX. CODE CRIM. PROC. art 37.07, § 4 (containing instructions that "[e]ligibility for parole does not guarantee that parole will be granted" and the jury is "not to consider the manner in

(continued...)

### 3. Jury Instruction

In issue three, appellant contends, in the alternative, that the trial court erred in failing to give the jury an instruction that it could not consider parole after the jury sent out a note inquiring whether a life sentence in this case would be with or without parole.[25] Although appellant concedes that he did not request such an instruction, he contends that he was entitled to an egregious-harm review under *Almanza*.[26]

In his motion, appellant opposed any type of jury instruction about parole—even an instruction to not consider the possibility of parole. He is therefore estopped from now claiming that he should have obtained such an instruction.[27] It could perhaps be argued that circumstances had materially changed since he filed his motion: evidence was introduced about Nystrom's parole eligibility and the jury sent out notes inquiring about parole. But the trial judge cannot have been expected to read defense counsel's mind and decide that appellant had changed his position. To the

---

(...continued)
which the parole law may be applied to this particular defendant").

[25] The exact wording of his issue is:

> In the alternative to Issue Two, when the jury sent out notes showing that it was considering parole, the trial court referred the jury to the charge, which contained no mention of parole. The appellant, though, made no request for an instruction precluding the jury from deliberating on the subject of parole. Was the appellant egregiously harmed by the omission?

[26] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

[27] *Druery v. State*, 225 S.W.3d 491, 505-06 (Tex. Crim. App. 2007) (defense counsel said defendant was not requesting submission of lesser-included offense of murder); *Ripkowski v. State*, 61 S.W.3d 378, 389-90 (Tex. Crim. App. 2001) (defense request that mitigation issue not be submitted); *Prystash v. State*, 3 S.W.3d 522, 531-32 (Tex. Crim. App. 1999) (defendant opposed submission of anti-parties special issue).

contrary, given defense counsel's request for a mistrial and his complete failure to request any sort of curative or limiting instruction, the trial judge had ample reason to believe that appellant's position remained the same and that, if the trial judge were to include the type of instruction appellant now says should have been included, appellant would likely complain of such action on appeal. Having once told the trial judge that he opposed even an instruction to disregard parole, it was incumbent upon appellant to inform the trial judge if the circumstances at trial had caused appellant to change his mind on the matter.

Moreover, appellant points to no applicable statute that would entitle him to any instruction about parole, even an instruction to completely disregard parole. Applicant would have been entitled to a limiting instruction in the jury charge regarding the evidence of Nystrom's parole if the evidence had been admitted for a limited purpose, but he did not ask for a limiting instruction at the time the evidence was admitted. "A failure to request a limiting instruction at the time evidence is presented renders the evidence admissible for all purposes and relieves the judge of any obligation to include a limiting instruction in the jury charge."[28] Indeed, we have said, "Trial judges should be wary of giving a limiting instruction under Rule 105(a) without a request because a party might well intentionally forego a limiting instruction as part of its deliberate strategy 'to minimize the jury's recollection of the unfavorable evidence.'"[29] Issue three is overruled.

### C. Challenge for Cause

In issue four, appellant contends that the trial judge erred in denying his challenge for cause to prospective juror Dugger. Appellant claims that Dugger was challengeable for cause because she

---

[28] *Williams*, 273 S.W.3d at 230.

[29] *Oursbourn v. State*, 259 S.W.3d 159, 179 n.80 (Tex. Crim. App. 2008).

stated that a finding of intentional, deliberate murder will *always* entail a finding of probability of future criminal acts of violence.[30]

Appellant points to the following passage in voir dire:

[DEFENSE COUNSEL]: Ms. Dugger, if we go back again to this hypothetical defendant here, if you found that he committed this act intentionally, it wasn't an accident or mistake, there was no legal justification, and he did it deliberately, in your mind would that indicate to you that he was always going to be a future danger?

[PROSPECTIVE JUROR DUGGER]: Yes.

Although there had been a substantial amount of questioning by the prosecutor and defense counsel before this point, this passage was the last question asked in Dugger's voir dire. Appellant had previously questioned Dugger repeatedly about her response on the mitigation issue to a hypothetical in which the jury had already found that the defendant intentionally and deliberately committed the murder *and* that the defendant constituted a future danger,[31] but the question set out above was the first time that Dugger had been asked about whether her response to the deliberateness issue would impact her perception of the future-dangerousness issue.

Notably, appellant did not inform Dugger that the law required that she keep an open mind on the future-dangerousness issue even after answering the deliberateness issue "yes." He did not ask her whether she could follow that law and set aside any tendency to automatically believe that

---

[30] Appellant exercised a peremptory challenge against Dugger, exhausted his peremptory challenges, requested (and was denied) more peremptory challenges, and identified at least one objectionable juror who sat on the jury. Appellant has therefore satisfied the traditional predicate for showing harm from the erroneous denial of a defense challenge for cause. *Freeman v. State*, 340 S.W.3d 717, 731 (Tex. Crim. App. 2011).

[31] The juror had indicated that she would find no mitigation under those circumstances, regardless of any other evidence she heard, but subsequent questioning by the State rehabilitated her on that point.

a defendant who kills deliberately would also be a future danger.

We review a trial court's decision to deny a challenge for cause with great deference and will reverse only when a clear abuse of discretion has been shown.[32] "To establish that the challenge for cause is proper, the proponent of the challenge must show that the venireperson understood the requirements of the law and could not overcome his prejudice well enough to follow the law. So before a venireperson may be excused for cause on this basis, the law must be explained to him, and he must be asked whether he can follow that law, regardless of his personal views."[33] Appellant failed to explain the law to Dugger or to ask whether Dugger could follow the law despite her personal views.[34] Issue four is overruled.

### D. Expert Testimony

In issue five, appellant contends that the trial court erred in admitting testimony from Dr. Richard Coons regarding appellant's future dangerousness. Appellant relies heavily on our opinion

---

[32] *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010).

[33] *Gonzales v. State*, 2011 Tex. Crim. App. LEXIS 1323, 11 (September 28). *See also Davis*, 329 S.W.3d at 807.

[34] *See Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004) (prospective juror's statement during voir dire that "with a child killer or something I would vote the death penalty in a minute" did not render him challengeable for cause because "neither party questioned [him] further about his statement, explained to him what the law requires, or asked whether he could follow the law despite his personal views"); *Sells v. State*, 121 S.W.3d 748, 759 (Tex. Crim. App. 2003) (rejecting claim that prospective juror "was biased against the law that 'society' comprises persons inside prison" because the defendant "failed to meet his burden of showing that the law was explained to the venireperson, or that the venireperson was asked whether he could follow that law regardless of his personal views"); *Murphy v. State*, 112 S.W.3d 592, 600 (Tex. Crim. App. 2003) (prospective jurors were not challengeable based on faulty understanding of the term "probability" because "the law was not carefully or adequately explained" to them).

in *Coble v. State*.[35] However, appellant failed to preserve error.

To preserve error regarding the admission of evidence, a party must object in a timely fashion and state the specific ground for objection, if the ground is not apparent from the context.[36] The ground for objection, unless apparent from the context, must be stated with "sufficient specificity to make the trial court aware of the complaint."[37] Appellant claims that he preserved error in two ways: (1) by filing and obtaining an adverse ruling on a motion *in limine*, and (2) by having a *Daubert*[38] hearing outside the presence of the jury. We are not persuaded.

An adverse ruling on a motion in limine does not preserve error.[39] Appellant contends that his motion—although titled a motion *in limine*—requested that expert predictions on future dangerousness be excluded. Appellant seems to be suggesting that his motion was mislabeled and was actually a motion to exclude evidence. If such were the case, the motion could preserve error if the trial judge understood that the motion was in fact a motion to exclude evidence.[40] The only evidence appellant points to for the proposition that the trial judge understood his motion to be something other than *in limine* is the motion's language calling for the exclusion of evidence and a

---

[35] 330 S.W.3d 253, 270-80 (Tex. Crim. App. 2010).

[36] TEX. R. EVID. 103(a)(1). *See also* TEX. R. APP. P. 33.1(a)(1).

[37] R. 33.1(a)(1)(A).

[38] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[39] *Griggs v. State*, 213 S.W.3d 923, 926 n.1 (Tex. Crim. App. 2007) ("A motion in limine, whether granted or denied, preserves nothing for appellate review."); *Geuder v. State*, 115 S.W.3d 11, 14-15 (Tex. Crim. App. 2003).

[40] *See Geuder*, 115 S.W.3d at 14 n.10 (discussing *Draughon v. State*, 831 S.W.2d 331, 333 n.1 (Tex. Crim. App. 1992)).

written order denying the motion and showing the defendant's exception thereto. However, the judge's reaction to appellant's request for a *Daubert* hearing suggests the trial judge may not have understood the motion to be something other than *in limine*:

> [DEFENSE COUNSEL]: Your Honor, I assume they're offering him as an expert in the case.
>
> [PROSECUTOR]: Indeed we are.
>
> [DEFENSE COUNSEL]: In this case we'd ask for a 702, 705 hearing.
>
> THE COURT: Okay. Did you wait this long to delay this thing? Tell me yes or no.
>
> [DEFENSE COUNSEL]: No, Your Honor, I did not.
>
> THE COURT: Okay.

Under the circumstances, we find the record to be insufficient to show that the trial judge understood the motion to be a motion to exclude evidence rather than a motion *in limine*.[41]

But even assuming the trial court understood it as such, the motion failed to preserve error. In *Nenno*, we explained that a reliability inquiry outside the area of hard science involves a three-pronged inquiry: "(1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field."[42] Appellant's motion did not refer to Dr. Coons but generally castigated psychiatric and psychological expert testimony on future dangerousness as not meeting the applicable standards of reliability and relevance under Rule

---

[41] *See Draughon*, 831 S.W.2d at 333 & n.1 (appellant's motion to prevent the state from questioning "prospective jurors concerning their attitudes toward the death penalty" was clearly not "a request that the admissibility of evidence or disposition of other matter by the court be determined outside the jury's presence").

[42] *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998).

702 and as unfairly prejudicial under Rule 403. With respect to the reliability claim under Rule 702, the motion was in essence an attack under the second prong of *Nenno*—whether future-dangerousness predictions are properly within the scope of the fields of psychiatry and psychology. Although we have held Dr. Coons's methodology to be unreliable under Rule 702, we did so solely on the basis of the third prong of *Nenno*—whether Dr. Coons's testimony properly applied the principles in his field. [43] There are other psychiatrists and psychologists that use methodologies for assessing future dangerousness that differ radically from the methodology employed by Dr. Coons.[44] The motion's attack under the second prong of *Nenno* did not place the trial court on notice of appellant's current complaint relating to the third prong of *Nenno*. Indeed, it seems difficult to envision how an attack under the third prong could be made as a general matter, without reference to a specific expert witness's anticipated testimony. The broad-based attack on all psychiatric and psychological testimony on future dangerousness in the motion *in limine* simply did not preserve a contention that Dr. Coons's methodology in particular was unreliable,[45] and appellant does not now, in his brief, attempt to argue that all psychiatric and psychological assessments of future dangerousness are inadmissible.

We also find the existence of a *Daubert* hearing to be insufficient to preserve error. A

---

[43] *See Coble*, 330 S.W.3d 253, 274, 279 (Only third prong of inquiry, whether Dr. Coons's methodology properly relied upon the accepted principles of forensic psychiatry, was at issue, and Court concluded "the prosecution did not satisfy its burden of showing the scientific reliability of Dr. Coon's methodology for predicting future dangerousness.")

[44] *See Davis v. State*, 313 S.W.3d 317, 353-54 (Tex. Crim. App. 2010).

[45] *See Roberts v. State*, 220 S.W.3d 521, 532 (Tex. Crim. App. 2007) (global objection to victim-impact testimony did not place trial court on notice that a particular item of victim-impact testimony would be objectionable due to its unforeseeability).

hearing was held outside the presence of the jury in which Dr. Coons was extensively questioned on his qualifications and the reliability of his testimony. At the end of the hearing, the trial judge stated: "I'm going to hold that Dr. Coons is qualified and that the field—the psychiatric field of future dangerousness is a valid scientific theory and that—that the technique he used to apply it was valid, and that it was applied validly here in this Brewer case." But appellant never lodged any objection to the reliability of Dr. Coons's testimony during the hearing, or, as far as we can tell, at any other point before or during Dr. Coon's testimony. We addressed a similar issue in *Davis*, where we explained that the defendant must still lodge an objection at the *Daubert* hearing to preserve error:

> The trial court expressly found both experts to be qualified, their methodologies to be accepted by the relevant scientific community, and their testimony to be relevant and reliable in helping a jury understand the issue of future dangerousness. Appellant did not, during this hearing, lodge an objection to the testimony of these witnesses. Defense counsel did not suggest to the trial court that the witnesses were unqualified or the methodologies unreliable, nor did he present any evidence to that effect. Appellant has failed to show us that he has preserved error.[46]

Similarly, in *Neal*, we explained:

> Appellant filed a motion requesting voir dire of expert witnesses. The trial court granted the motion and allowed Dr. Coons to testify after conducting a hearing on his qualifications. Appellant did not object to the admission of Dr. Coons's testimony based on inadequate qualification. To preserve a complaint for appellate review, a specific and timely objection, motion, or request must be made to the trial court. The complaint is timely only if the party makes the complaint "as soon as the grounds for it become apparent." To be adequately specific, the complaint must "let the trial judge know what he wants and why he is entitled to it." In this case, although appellant did request a hearing on expert qualification in the first place, he did not object once the trial court had qualified Dr. Coons. Thus, he forfeited the right to challenge that ruling on appeal.[47]

The failure to articulate an objection after the *Daubert* hearing could mean that appellant was

---

[46] *Davis*, 313 S.W.3d at 352-53.

[47] *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008).

satisfied that the State met the applicable predicate for admissibility. But even if one assumed appellant still had an objection, one would be left with the question of what precisely the objection was. Was appellant objecting to Dr. Coons's qualifications, to the legitimacy of future-dangerousness predictions within the field of psychiatry, to Dr. Coons's particular methodology, to whether the evidence satisfied the "fit" requirement,[48] or to some combination of these?

Appellant did lodge an objection *after* Dr. Coons's testimony was complete. At that time, he objected on the basis of Rules 702 and 705 and various constitutional provisions. But that objection, insofar as it encompassed the complaint he now urges, was not timely. An objection is timely only if it is made as soon as the ground for objection becomes apparent.[49] The ground for appellant's objection became apparent, at the latest, at the close of the *Daubert* hearing. Appellant's belated objection did not preserve error. And even if the objection had been timely, it was not specific: Appellant never stated what aspect of Rule 702 he was relying upon, e.g. expert qualifications, whether the subject matter was a legitimate part of the field, whether the expert properly applied the principles of the field, or whether the testimony satisfied the "fit" requirement. Issue five is overruled.

The judgment of the trial court is affirmed.

Delivered: November 23, 2011
Do not publish

---

[48] *See Tillman v. State*, 2011 Tex. Crim. App. LEXIS 1343, 40-41 (October 5) (discussing the "fit" requirement); *Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000) (same).

[49] *Pena v. State*, 2011 Tex. Crim. App. LEXIS 1319, 19 (September 28); *Griggs*, 213 S.W.3d at 927.